933 P.2d 1036 (1997)
131 Wash.2d 484
William BURNET and Elene S. Burnet, individually and as guardian ad litem for Tristen L. Burnet, their minor child, Petitioners,
v.
SPOKANE AMBULANCE, a wholly owned subsidiary of Hospital Corporation of America, a foreign corporation doing business in Washington; St. Luke's Memorial Hospital, Inc., a non-profit Washington corporation, d/b/a Valley Hospital and Medical Center; Robert Rosenthal, an individual, Jeffrey Graham, an individual, and Michael Donlan, an individual, Defendants,
Sacred Heart Medical Center, a non-profit Washington corporation, Respondent.
No. 63443-2.
Supreme Court of Washington, En Banc.
Argued May 30, 1996.
Decided April 3, 1997.
As Amended on Denial of Reconsideration June 5, 1997.
*1037 Dawson & Meade, Marcia Meade, Spokane, for Petitioner.
Randall & Danskin, Michael Myers, Spokane, for Respondent.
ALEXANDER, Justice.
The issue before us is whether the Court of Appeals erred in affirming a trial court's decision disallowing evidence and limiting discovery by the plaintiffs on the issue of whether a hospital negligently granted privileges to two doctors who, according to the plaintiffs, were unqualified to recognize or treat their daughter's serious neurological condition. We reverse the Court of Appeals and remand the case for trial on that issue.
Tristen Burnet was born on July 3, 1982. At about the time Tristen turned five months old, she began to suffer from seizures. On December 9, 1983, Tristen had a prolonged seizure that required her to be hospitalized, and which resulted in damage to her brain. Her parents, William and Elene Burnet (hereinafter referred to as the Burnets), individually and as guardians for Tristen, filed a medical malpractice suit in Spokane County Superior Court against Spokane Valley General Hospital, Spokane Ambulance, and Tristen's attending physician, Dr. Robert Rosenthal. The Burnets alleged that these defendants failed to provide an adequate supply of oxygen to Tristen at the time she was under their care, and that this failure caused the damage to Tristen's brain.
Following the 1983 injury, Tristen became a patient of Dr. Jeffrey Graham. She was under Dr. Graham's care, when, on September 28, 1985, she experienced another prolonged seizure. As a result, she was hospitalized in the pediatric intensive care unit at Sacred Heart Medical Center (Sacred Heart). On October 2, 1985, while still hospitalized at Sacred Heart, Tristen developed cerebral edema, an accumulation of fluid in the skull that causes an increase of pressure on the brain. Consequently, Tristen sustained additional, extensive neurological damage.
On July 29, 1986, the Burnets amended their complaint to include claims relating to the 1985 injury and to add Dr. Graham and Sacred Heart as additional defendants. Thereafter, Dr. Rosenthal, Spokane Valley General Hospital, and Spokane Ambulance were voluntarily dismissed from the lawsuit. The complaint against the remaining defendants, Dr. Graham and Sacred Heart, alleged negligence, breach of contract, failure to disclose the risks of health care services (informed consent), and a violation of the Consumer Protection Act.
On March 7, 1987, Sacred Heart propounded interrogatories to the Burnets, asking for "the particular acts or omissions" including "each JCAH [Joint Commission on Accreditation of Hospitals] standard which [the Burnets] allege that Sacred Heart Medical Center did not follow which forms the basis of [the] complaint" against it. Clerk's Papers (CP) at 203, 205. The Burnets answered, indicating that, among other things, Sacred Heart "was on notice that Dr. Jeffrey Graham was not capable of handling the neurological difficulties" that Tristen was experiencing, and, as a consequence, failed to provide her with appropriate medical care. CP at 204. The Burnets also indicated that, because depositions of Sacred Heart officials had yet to be conducted, they were unable to identify which of the JCAH standards relating to special units, such as Sacred Heart's pediatric intensive care unit, had been violated.
In November 1987, Sacred Heart and Dr. Graham each moved for summary judgment, seeking dismissal of all of the Burnets' claims. In a memorandum supporting its motion, Sacred Heart's then-counsel acknowledged that "a hospital owes an independent duty of care to its patients [and] ... must exercise reasonable care to insure that *1038 the physicians selected as members of a hospital medical staff are competent," but argued that the Burnets "ha[d] failed to establish a prima facie case of medical negligence, thereby foreclosing a showing of corporate negligence." CP at 213. The Burnets countered that Sacred Heart had yet to provide them with complete discovery on what it knew about Dr. Graham's qualifications, explaining that Sacred Heart should have known that Dr. Graham was not certified in pediatric neurology and should have monitored him more closely.
The trial court denied the summary judgment motions "with respect to the negligence issue," including the claim against Sacred Heart "with respect to [its] potential corporate liability." CP at 166. It did, however, enter a judgment dismissing the Burnets' other claims. The Burnets appealed the order to the Court of Appeals, Division Three, contending only that its consumer protection and informed consent claims should not have been dismissed. The Court of Appeals affirmed the trial court. Burnet v. Spokane Ambulance, 54 Wash.App. 162, 772 P.2d 1027, review denied, 113 Wash.2d 1005, 777 P.2d 1050 (1989). While that appeal was pending, the Burnets again amended their complaint, this time joining Dr. Michael Donlan, the director of Sacred Heart's pediatric intensive care unit, as a defendant.
Following the appeal, new counsel was substituted as attorney for Sacred Heart. In a set of interrogatories and requests for production filed on July 26, 1990, Sacred Heart's counsel asked the Burnets to name the expert witnesses they expected to call at trial and the "substance of facts and opinions to which [each expert] is expected to testify." CP at 595-96. On October 2, 1990, Sacred Heart received from the Burnets a list of 18 experts they intended to call as witnesses, together with a description of their expected testimony. Although none of the experts was identified as having an opinion on the issue of whether Sacred Heart had been negligent in "credentialing" Drs. Graham and Donlan under the JCAH standards, the Burnets' response included the names of at least three persons who were expected to testify on "the standard of care for physicians providing care to patients such as Tristen Burnet." CP at 594-615. On October 12, 1990, Sacred Heart sought a scheduling order requiring the Burnets to "identify all [of its] experts by December 1, 1990 [and] make available any such experts for deposition by defendants within sixty (60) days thereafter[.]" CP at 2439. The trial court granted Sacred Heart's request.
The discovery process, which was essentially conducted in December 1990, was replete with verbal exchanges between counsel for the defendants and the Burnets' trial attorney which indicated a degree of enmity between them. For example, the Burnets' counsel frequently noted for the record what she contended was "obstreperous conduct" by counsel for Sacred Heart and the other defendants, and obstruction of the Burnets' efforts to obtain discovery. See, e.g., CP at 789, 936-38; see also CP at 2398-2412. On the other hand, attorneys for each of the defendants complained during these depositions that opposing counsel was inquiring into matters outside the scope of the deposition, and was engaging in what they characterized as "reprehensible abuse of discovery rules and procedures." CP at 931.
During a deposition on December 13, 1990, the Burnets' attorney stated that the position of the plaintiffs was that they believed that Sacred Heart "had some problems with what they were letting Dr. Graham and Dr. Donlan do." CP at 764-65. However, it was not until April 18, 1991, when the Burnets filed a supplemental answer to the interrogatories that Sacred Heart had earlier propounded to them, that the Burnets clearly stated that they were contending that Sacred Heart was negligent in failing to properly review the physicians' credentials.
In response to the Burnets' supplemental answer to interrogatories, Sacred Heart requested of the trial court a discovery conference and a protective order prohibiting discovery on "the credentialing claim," arguing that the Burnets had not pleaded that cause *1039 of action. CP at 2380-82.[1] At a hearing on its request for a protective order, Sacred Heart's counsel contended, essentially, that the Burnets' October 2 response to interrogatories and requests for production led Sacred Heart to believe that the Burnets' experts would testify only with respect to the physicians' treatment decisions, and not with respect to the actions of Sacred Heart in granting hospital privileges to Dr. Graham and Dr. Donlan. The trial court agreed with Sacred Heart, indicating that "claims based on the doctrine of corporate negligence regarding credentialing have not been sufficiently pleaded nor have responses to discovery given sufficient notice of any such claim." CP at 194. It then issued an order stating that "no claim of corporate negligence regarding credentialing is at issue in this litigation and there shall be no further discovery from [Sacred Heart] on that issue." CP at 195.
Before trial, the Burnets settled their claims against Drs. Graham and Donlan for $550,000. Sacred Heart then moved for summary judgment on all claims against it based on vicarious liability for the physicians' alleged negligence. The trial court granted its motion.
The case went to trial in January 1993 with Sacred Heart as the only defendant. The Burnets' sole surviving claim was an allegation of negligence on the part of Sacred Heart's nurses. The jury returned a verdict in favor of Sacred Heart.
After the trial court denied the Burnets' motion for a judgment notwithstanding the verdict, the Burnets appealed directly to this court. We transferred their appeal to the Court of Appeals, Division Three. Although it rejected the trial court's holding that the Burnets' claim of corporate negligence was not properly pleaded, the Court of Appeals nonetheless affirmed the trial court, recharacterizing the primary issue as a "compliance problem with a scheduling order." Burnet v. Spokane Ambulance, No. 14052-1-III, slip op. at 10 (Wash.Ct.App. Aug. 10, 1995). In making that determination, it concluded that the trial court's decision to limit discovery and to subsequently preclude testimony on that issue was appropriate. The Burnets petitioned this court for review, which was granted.[2]
The Burnets contend that the Court of Appeals erred in affirming the trial court's order limiting discovery, in effect removing their claim that Sacred Heart was negligent in granting hospital privileges to the doctors who treated Tristen at that hospital. In the Burnet's view, the Court of Appeals's decision constituted a sanction for discovery abuse, a sanction which they argue was not warranted because "the trial court never found that there was a violation of a court order, or a willful non-disclosure," and was, in any case, excessive. Pet. for Review at 1. Sacred Heart responds that, even in light of the Court of Appeals's recharacterization of the issue as a "compliance problem with a scheduling order," that court did not err in determining that the trial court did not abuse its discretion in entering an order limiting claims and discovery. Answer to Pet. for Review at 8.
Although the Court of Appeals affirmed the trial court, it rejected the trial court's ruling that the claim of corporate negligence had not been properly pleaded. The Court of Appeals was correct in that regard because, as it noted, the issue of corporate negligence was placed into contention by the *1040 complaint "together with interrogatory answers and with pretrial proceedings." Burnet, slip op. at 9 (citing Schoening v. Grays Harbor Community Hosp., 40 Wash.App. 331, 336-37, 698 P.2d 593) (indicating that even where a "complaint is not a vision of precise pleading[,] ... [a] claim is adequately pleaded if it contains a short, plain statement showing that the pleader is entitled to relief, and a demand for judgment based thereon."), review denied, 104 Wash.2d 1008 (1985).
Despite rejecting the theory upon which the trial court ruled, the Court of Appeals was not foreclosed from upholding the trial court's ruling on the well-recognized basis that "on appeal, an order may be sustained on any basis supported by the record." Hadley v. Cowan, 60 Wash.App. 433, 444, 804 P.2d 1271 (1991) (citing LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027, cert. denied, 493 U.S. 814, 110 S.Ct. 61, 107 L.Ed.2d 29 (1989)). The issue we must decide, therefore, is whether the record and law support the Court of Appeals's conclusion that the trial court's order was a justifiable response to "compliance problem with a scheduling order." Burnet, slip op. at 10.
The trial court's order excluding from the case the issue of negligent credentialing by Sacred Heart, and limiting discovery on that issue, was precipitated by a motion Sacred Heart made pursuant to Civil Rule 26. That rule authorizes a trial court to direct that the parties confer on the subject of discovery.[3] It also provides that following a discovery conference, the trial court may enter an order identifying the issues for discovery purposes, setting limits on discovery, and determining "such other matters, ... as are necessary for the proper management of discovery in the action." CR 26(f).
When "a party fails to obey an order entered under rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just[.]" CR 37(b)(2). Among the sanctions available for violations of this rule is "[a]n order refusing to allow the disobedient party to support ... designated claims ... or prohibiting him from introducing designated matters in evidence[.]" CR 37(b)(2)(B).
This rule is consistent with the general proposition that a trial court has broad discretion as to the choice of sanctions for violation of a discovery order. Phillips v. Richmond, 59 Wash.2d 571, 369 P.2d 299 (1962). Such a "discretionary determination should not be disturbed on appeal except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Associated Mortgage Investors v. G.P. Kent Constr. Co., 15 Wash.App. 223, 229, 548 P.2d 558, review denied, 87 Wash.2d 1006 (1976). Those reasons should, typically, be clearly stated on the record so that meaningful review can be had on appeal. When the trial court "chooses one of the harsher remedies allowable under CR 37(b), ... it must be apparent from the record that the trial court explicitly considered whether a lesser sanction would probably have sufficed," and whether it found that the disobedient party's refusal to obey a discovery order was willful or deliberate and substantially prejudiced the opponent's ability to prepare for trial. Snedigar v. Hodderson, 53 Wash.App. 476, 487, 768 P.2d 1 (1989) (citing to due process considerations *1041 outlined in Associated Mortgage ), rev'd in part, 114 Wash.2d 153, 786 P.2d 781 (1990). We have also said that "`it is an abuse of discretion to exclude testimony as a sanction [for noncompliance with a discovery order] absent any showing of intentional nondisclosure, willful violation of a court order, or other unconscionable conduct.'" Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wash.2d 693, 706, 732 P.2d 974 (1987) (quoting Smith v. Sturm, Ruger & Co., 39 Wash.App., 740, 750, 695 P.2d 600, 59 A.L.R.4th 89, review denied, 103 Wash.2d 1041 (1985)).
The Burnets assert that they did not willfully violate the court's discovery order. Thus, they rely on Hutchinson to support their argument that the trial court erred in entering an order prohibiting discovery on their corporate negligence claim and excluding that issue from the case.
Sacred Heart responds that the Burnets willfully violated the discovery order because they were "without reasonable excuse." Allied Fin. Servs., Inc. v. Mangum, 72 Wash. App. 164, 168, 864 P.2d 1 (1993), 72 Wash. App. 164, 871 P.2d 1075 (1994). The Court of Appeals apparently agreed with Sacred Heart, concluding the Burnets' explanation that their "experts could shed no light on whether a viable credentialing claim existed without access to the file which [Sacred Heart] steadfastly refused to provide, first as a matter of confidentiality and later as a matter of immunity," was not a reasonable excuse for the Burnets' failure to specifically describe the contents of their experts' opinions as required by discovery scheduling order. Burnet, slip op. at 11. Sacred Heart also attacks the Burnets' reliance upon Hutchinson, asserting that the Burnets
ignore[ ] the more recent decision in Physicians Insurance Exchange v. Fisons Corp. In the context of a violation of discovery rules, the court held that
... intent need not be shown before sanctions are mandated.
Rather, the court held:
The wrongdoer's lack of intent to violate the rules ... may be considered by the trial court in fashioning sanctions.
Answer to Pet. for Review at 16 (citations omitted).
In emphasizing the above-quoted portions of the Fisons' opinion, Sacred Heart overlooks or de-emphasizes the underlying principles enunciated therein. See Washington State Physicians Ins. Exch. & Ass'n. v. Fisons Corp., 122 Wash.2d 299, 858 P.2d 1054 (1993). Some of those guiding principles are as follows: the court should impose the least severe sanction that will be adequate to serve the purpose of the particular sanction, but not be so minimal that it undermines the purpose of discovery; the purpose of sanctions generally are to deter, to punish, to compensate, to educate, and to ensure that the wrongdoer does not profit from the wrong. Fisons, 122 Wash.2d at 355-56, 858 P.2d 1054.
Sacred Heart also cites two post-Fisons decisions in which the Courts of Appeals upheld the respective trial courts' imposition of sanctions for what were considered to be "willful" violations of discovery rules. In one of the cases, Allied Fin. Servs. v. Mangum, 72 Wash.App. 164, 168, 864 P.2d 1 (1993), 72 Wash.App. 164, 871 P.2d 1075 (1994), the trial court excluded witnesses for the defendants because they could not provide an explanation for failing, up to the time of trial, to name any of their witnesses. In the other case, Dempere v. Nelson, 76 Wash.App. 403, 405, 886 P.2d 219 (1994), review denied, 126 Wash.2d 1015, 894 P.2d 565 (1995), the trial court excluded a witness that the party identified only 13 days before trial.
We note, initially, that the sanction that was imposed in this case is significantly more severe than the sanctions imposed in either Allied or Dempere. Here, the trial court not only limited the Burnets' discovery on the credentialing issue, but it also removed that issue from the case. Furthermore, the circumstances of this case are far different than those which the Court of Appeals faced in the two above-cited cases. One major difference is that although several years had transpired from the initiation of the Burnets' claim until their expert witnesses were named, deposed, and their opinions was clearly identified, a significant amount of time yet remained before trial. That being the case, Sacred Heart *1042 could not be said to have been as greatly prejudiced as the non-wrongdoing parties in Allied and Dempere, who engaged in the sanctionable conduct on the eve of trial.[4] In addition, unlike the situation in Allied and Dempere, the record here reveals that some of the delay in completing discovery was due to what can only be described as bickering between counsel for the opposing parties. While some of the responsibility for this unfriendly atmosphere can be attributed to the Burnets' counsel, we are satisfied, after reviewing the voluminous record, that Sacred Heart's counsel bears a portion of the responsibility for the acrimonious spirit that developed, and which had the effect of delaying the identification and refinement of the issues before the court.
More importantly, though, we agree with the Burnets that its negligent credentialing claim against Sacred Heart, and discovery relating to it, should not have been excluded absent a trial court's finding that the Burnets willfully violated a discovery order. In that regard, we rely upon Hutchinson and note that there was no finding by the trial court of willful violation on the part of the Burnets. Indeed, the record would not support such a finding.
In any case, we are satisfied that it was an abuse of discretion for the trial court to impose the severe sanction of limiting discovery and excluding expert witness testimony on the credentialing issue without first having at least considered, on the record, a less severe sanction that could have advanced the purposes of discovery and yet compensated Sacred Heart for the effects of the Burnets' discovery failings.[5]See Fisons, 122 Wash.2d at 355-56, 858 P.2d 1054. Furthermore, even if the trial court had considered other options before imposing the sanction that it did, we would be forced to conclude that the sanction imposed in this case was too severe in light of the length of time to trial, the undisputedly severe injury to Tristen, and the absence of a finding that the Burnets willfully disregarded an order of the trial court. See Lane v. Brown & Haley, 81 Wash.App. 102, 106, 912 P.2d 1040 ("[T]he law favors resolution of cases on their merits."), review denied, 129 Wash.2d 1028, 922 P.2d 98 (1996).
The dissent concludes that the sanction imposed by the trial court was appropriate, preferring to interpret the civil rules for superior court in a way that facilitates what it describes as the "case management powers of the trial courts." Dissenting op. at 1048. While we are not unmindful of the need for efficiency in the administration of justice, our overidding responsibility is to interpret the rules in a way that advances the underlying purpose of the rules, which is to reach a just determination in every action. See CR 1. Because we believe it would be an injustice to deny Tristen Burnet's parents and her representatives an opportunity to present a potentially valid negligent credentialing claim against Sacred Heart, the case should be remanded for a trial on that issue.
Finally, it should be noted that the dissent faults the Burnets for not moving to modify the trial court's order prior to trial, characterizing this as a "fail[ure] to mitigate any harm arising from the alleged error." Dissenting op. at 1046. The dissent further suggests that by such a "failure," the Burnets "did not effectively preserve the error for appellate review." Dissenting op. at 1046. We observe, first, that this issue was not raised by Sacred Heart at the trial court or at the Court of Appeals. Consequently, *1043 there was no briefing by either party on the issue. Furthermore, the dissent fails to acknowledge relevant rules concerning preservation of error. Where, as here, the issue was clearly before the trial court, and its prior rulings demonstrated that a motion to modify the order would not have been granted, a party cannot be reasonably held to have waived the right to assert the error on appeal merely by declining to engage in the useless act of repeating their arguments in a motion to amend the trial court's order. East Gig Harbor Improvement Ass'n v. Pierce County, 106 Wash.2d 707, 709-10 n. 1, 724 P.2d 1009 (1986) ("As long as the trial court had sufficient notice of the issue to know what legal precedent was pertinent this court will not refuse to consider the issue.") (citing Osborn v. Public Hosp. Dist. 1, 80 Wash.2d 201, 492 P.2d 1025 (1972)). See also Phillips v. Kaiser Aluminum & Chem. Corp., 74 Wash.App. 741, 753-54, 875 P.2d 1228 (1994) (where a trial court has ruled before trial that the jury would only consider certain matters, the plaintiff "was not required to propose an instruction that he knew would not be given").
In conclusion, we reverse the Court of Appeals affirmance of the trial court's protective order. While the judgment with respect to Sacred Heart's liability for the alleged negligence of its nurses is not disturbed, the case is remanded for further proceedings on the Burnets' claim that Sacred Heart was negligent in granting hospital privileges to Dr. Graham and Dr. Donlan.
Reversed and remanded.
SMITH, JOHNSON, MADSEN and SANDERS, JJ., concur.
TALMADGE, Justice (dissenting).
Although we have adopted rules which provide for strong case management by trial court judges in order to speed up the administration of justice in our courts,[1] the majority determines the trial court here abused its discretion in exercising its case management authority under our civil rules. Yet, the trial court did not abuse its discretion under our rules for discovery conferences and pretrial conferences, and properly limited discovery on a theory when the Burnets did not comply with the pretrial discovery order. I would affirm the trial court.

FACTS
As the majority recounts in its opinion, this case arose out of conduct which occurred in 1983 and 1985. The original lawsuit was filed in 1984 and has gone through numerous permutations before reaching us in its present form. Various defendants have settled with the Burnets. New sets of defendants have been joined. The case is 12 years old. It has also been the subject of previous appellate *1044 review. See Burnet v. Spokane Ambulance, 54 Wash.App. 162, 772 P.2d 1027, review denied, 113 Wash.2d 1005, 777 P.2d 1050 (1989). The case has also been characterized by constant conflicts between counsel in which the lawyers heaped personal abuse upon one another. The trial court imposed some $8,000 in sanctions on counsel for plaintiff alone.
The present controversy relates to an October 12, 1990 order requiring the Burnets to identify all of their experts by December 1, 1990, and make them available for deposition no later than 60 days thereafter. In response to interrogatories submitted prior to the entry of the discovery order, the Burnets filed supplemental answers on April 18, 1991, asserting that Sacred Heart Hospital (Sacred Heart) was negligent in failing to properly review the credentials of two of its physicians who treated Tristen Burnet.
In response to the supplemental answers, Sacred Heart asked the trial court to convene a conference pursuant to CR 16 and 26(f) and to enter a protective order prohibiting discovery on the Burnets' credentialing claim because they had not pleaded such a cause of action.[2] Sacred Heart specifically argued to the trial court that the Burnets could not amend their complaint to assert a negligent credentialing issue. The trial court entered an order granting Sacred Heart's motion because a claim for corporate negligence pertaining to credentialing of Sacred Heart staff physicians was not then at issue in the case and there could be no discovery on it. The trial court, however, did not foreclose a CR 15 motion by the Burnets to amend their complaint to specifically assert the issue of corporate negligence predicated on negligent credentialing. Subsequently, the Burnets amended their complaint several times, but failed to properly assert a negligent credentialing claim. On November 4, 1992, the Burnets sought leave to file another amended complaint adding this claim. As no disposition of this motion appears in the record it was apparently struck and not heard. The Burnets also raised the negligent credentialing issue before trial, but the trial court adhered to its July 8, 1991 order. Burnet v. Spokane Ambulance, No. 14052-1-III (Aug. 10, 1995), slip op. at 5.

ANALYSIS
A. CR 16/CR 26(f) Conferences
Sacred Heart moved under CR 16 and CR 26(f) for a conference before the trial court.
*1045 The combination of the rules as authority for the conference ultimately held by the trial court created unnecessary confusion.
CR 16, based on a federal counterpart and adopted in 1967, provides as follows:
(a) Hearing Matters Considered. By order, or on the motion of any party, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:
(1) The simplification of the issues;
(2) The necessity or desirability of amendments to the pleadings;
(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;
(4) The limitation of the number of expert witnesses;
(5) Such other matters as may aid in the disposition of the action.
(b) Pretrial Order. The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pretrial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to nonjury actions or extend it to all actions.
Generally, the purpose of a CR 16 conference is to compel the parties to disclose their claims and defenses, and to allow the parties and the court to assess the need for amendments to the parties' pleadings. See 3A Orland and Tegland, Washington Practice (4th ed.1992) 404-05. In entering orders based on the pretrial conference, the trial court enjoys substantial discretion in dealing with cases. Such orders have addressed evidentiary rulings, witness lists, and agreed facts. Id. at 406. The trial court may even limit the number of expert witnesses. Vasquez v. Markin, 46 Wash.App. 480, 491, 731 P.2d 510 (1986), review denied, 108 Wash.2d 1021 (1987).
Once entered, the pretrial order controls the subsequent handling of the case, unless modified. Stempel v. Department of Water Resources, 82 Wash.2d 109, 115, 508 P.2d 166 (1973). A pretrial order may be modified if a party can demonstrate a manifest injustice will result from the enforcement of the order:
The general rule is that new theories will not be entertained after the parties have entered into pretrial conference and a pretrial order has been issued as a result. The parties are bound by the facts agreed to and established by the order.
Esmieu v. Schrag, 92 Wash.2d 535, 537, 598 P.2d 1366 (1979) (citations omitted).
CR 26(f) is of more recent vintage. Adopted in 1985, the rule states:
Discovery Conference. At any time after commencement of an action the court may direct the attorneys for the parties to appear before it for a conference on the subject of discovery. The court shall do so upon motion by the attorney for any party if the motion includes:
(1) A statement of the issues as they then appear;
(2) A proposed plan and schedule of discovery;
(3) Any limitations proposed to be placed on discovery;
(4) Any other proposed orders with respect to discovery; and
(5) A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion.
Each party and his attorney are under a duty to participate in good faith in the framing of a discovery plan if a plan is proposed by the attorney for any party.
Notice of the motion shall be served on all parties. Objections or additions to matters set forth in the motion shall be served not later than 10 days after service of the motion.
Following the discovery conference, the court shall enter an order tentatively identifying *1046 the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any, and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action. An order may be altered or amended whenever justice so requires.
Subject to the right of a party who properly moves for a discovery conference to prompt convening of the conference, the court may combine the discovery conference with a pretrial conference authorized by rule 16.
Again, the rule provides for substantial judicial discretion in the entry of the order and expressly provides the order may be "altered or amended whenever justice so requires."
B. The Discovery Conference Order Entered by the Trial Court
The trial court entered two key orders in this case. It ordered the Burnets to disclose experts by December 1, 1990 and to make them available for deposition no later than February 1, 1991. The Burnets subsequently revived the physician credentialing claim when they filed supplemental answers to interrogatories on April 18, 1991. These answers were filed long after the discovery cut off date of December 1, 1990. This action prompted Sacred Heart's request for a discovery conference. As a result of the conference, the trial court entered an order on July 8, 1991 which found "claims based on the doctrine of corporate negligence regarding credentialing have not been sufficiently pleaded nor have responses to discovery given sufficient notice of any such claim against Sacred Heart Medical Center" and ordered:
[N]o claim of corporate negligence regarding credentialing is at issue in this litigation and there shall be no further discovery from defendant Sacred Heart Medical Center on that issue.
Clerk's Papers at 194-95. Sacred Heart also argued the Burnets should not be permitted to amend their pleadings to include a negligent credentialing claim. However, no such bar to amendment appears in the order.
Although there has been some confusion in the case as to whether this order was based on CR 16 or CR 26(f), as the majority notes, Majority op. at 1039 n.1; 1040 n.3, the operative effect of the order is the same whether based on CR 16, or CR 26(f). The order was a proper exercise of the trial court's discretion to manage the case.
It is the proper function of the trial court to exercise its discretion in the control of litigation before it. Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 777, 819 P.2d 370 (1991). The trial court possesses broad discretion to manage discovery in a fashion that will implement full disclosure of relevant information and at the same time protect against harmful side effects. To that end, the court can issue protective orders regulating the extent and manner of discovery. State v. Hamilton, 24 Wash.App. 927, 935-36, 604 P.2d 1008 (1979) (citations omitted), review denied, 94 Wash.2d 1007 (1980). See also Rhinehart v. The Seattle Times Co., 98 Wash.2d 226, 232, 654 P.2d 673 (1982), affirmed, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); Penberthy Electromelt Int'l, Inc. v. U.S. Gypsum Co., 38 Wash.App. 514, 521, 686 P.2d 1138 (1984). Thus, the entry of orders by the trial court on discovery matters is within the discretion of the trial court and we review such orders only when the trial court has abused its discretion.
C. Preservation of the Alleged Error
An important threshold question in this case is whether the Burnets properly preserved any error associated with the trial court's July 8, 1991 order for review. An order under CR 16 or CR 26(f) is modifiable, but the Burnets failed to move to modify the July 8, 1991 order.
By failing to do so,[3] they failed to mitigate any harm arising from the alleged error with respect to the order and did not effectively *1047 preserve the error for appellate review. See, e.g., State v. Jackman, 113 Wash.2d 772, 779-82, 783 P.2d 580 (1989) (defendant could not move for new trial under CrR 7.6(a)(3) where witness did not appear at trial and defendant failed to move for continuance); State v. Gallo, 20 Wash.App. 717, 728, 582 P.2d 558 (error not considered where counsel objected to answer after it was given, but failed to move to strike the answer), review denied, 91 Wash.2d 1008 (1978).
In federal cases arising under the counterpart to CR 16, the failure to seek modification of conference orders forecloses appellate review. In Flannery v. Carroll, 676 F.2d 126, 129-32 (5th Cir.1982), the Fifth Circuit Court of Appeals held that plaintiffs had waived one of their claims by failing to include it in a pretrial order or requesting amendment of the order noting:
The pre-trial order is an indispensable mechanism in the district court. Its purpose is to determine which of the claims pleaded will actually be tried. The claims, issues, and evidence are limited by the order and the course of the trial is thereby narrowed to expedite the proceeding. Once the order is entered, it controls the scope and course of the trial, Fed. R.Civ.P. 16. If a claim or issue is omitted from the order, it is waived.
Because of the importance of the pre-trial order in achieving efficacy and expeditiousness upon trial in the district court, appellate courts are hesitant to interfere with the court's discretion in creating, enforcing, and modifying such orders. District courts are encouraged to construe pre-trial orders narrowly without fear of reversal. Unless the court has abused its discretion, its rulings concerning the order will not be disturbed on appeal.
....
Because the pre-trial order omitted the [state] claim, defendant had the right to believe the claim was waived unless and until plaintiffs sought to amend the order.
Flannery, 676 F.2d at 129, 131(citations omitted). See also Hullman v. Board of Trustees of Pratt Community College, 950 F.2d 665, 668 (10th Cir.1991) (the pretrial order "measures the dimensions of the lawsuit, both in the trial court and on appeal," holding in absence of any motion to amend or modify pretrial order, community college administrator failed to identify in his alleged protected free speech claim a theory of financial mismanagement); Fernandez v. United Fruit Co., 200 F.2d 414-15 (2nd Cir.1952) (no error where court does not allow plaintiff to pursue issues appearing in the complaint, but not in the pretrial order, where plaintiff fails to amend the pretrial order), cert. denied, 345 U.S. 935, 73 S.Ct. 797, 97 L.Ed. 1363 (1953); Southern California Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1264-65 (9th Cir.1984) (where no request for modification of a pretrial order is made, an issue not appearing in the pretrial order is no longer an issue in the case, references to the issue in the record of the case before the pretrial order notwithstanding; the very purpose of the pretrial order is to narrow the scope of the suit to those issues that are actually disputed). In Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992), the Ninth Circuit upheld the district court's denial of plaintiff's motion to amend his complaint filed four months after the cut-off date for amended pleadings in the pretrial order because the plaintiff failed to seek modification of the pretrial order; the Ninth Circuit noted:
A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [plaintiff's] case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15. ([P]ermitting amendment under Rule 15(a) in violation of district court scheduling order "would have nullified the purpose of rule 16(b)(1)").
As the torrent of civil and criminal cases unleashed in recent years has threatened *1048 to inundate the federal courts, deliverance has been sought in the use of calendar management techniques. Rule 16 is an important component of those techniques. We will not snatch it away or destroy its effectiveness by requiring district courts to countenance the practices exemplified by the facts of this case.
Johnson, 975 F.2d at 610-11 (citations omitted).
The federal cases note the effect of a pretrial order, the procedure for changing or challenging such order, and the consequences of failing to follow that procedure. The rules gleaned from these cases simply stated are (1) a pretrial order sets the parameters for trial and appeal, (2) a motion to modify is a necessary first step for changing or challenging a pretrial order, and (3) failure to move to modify a pretrial order results in waiver of a claim not appearing in the order and effectively forecloses review. Under these rules, the Burnets' failure to modify the pretrial order resulted in waiver of their negligent credentialing claim and foreclosure of review. I would hold the Burnets failed to preserve any error associated with the July 8, 1991 order.[4]
D. Sanctions for Discovery Violations
The majority assumes the error was properly preserved and suggests the trial court's "sanction" for the Burnets' failure to comply with the discovery order was excessive. The majority states the trial court did not consider appropriate alternatives to the sanction imposed as required by Washington State Physicians Ins. Exch. & Ass'n. v. Fisons Corp., 122 Wash.2d 299, 858 P.2d 1054 (1993), and concludes the trial court abused its discretion in "limiting discovery and excluding expert witness testimony on the credentialing issue without first having at least considered on the record a less severe sanction." Majority op. at 1042. But, the majority goes too far in emphasizing one of several guidelines noted in Fisons. Although Fisons notes that "the least severe sanction that will be adequate to serve the purpose of the particular sanction should be imposed," it goes on to say, "[t]he sanction should insure that the wrongdoer does not profit from the wrong." Fisons, 122 Wash.2d at 355-56, 858 P.2d 1054. Thus, the trial court must weigh many factors in determining an appropriate sanction. It is proper to leave these determinations to the trial court. Indeed, fashioning a sanction is within the sound discretion of the trial court because it has "tasted the flavor" of the litigation and is in the best position to make this kind of determination. Watson v. Maier, 64 Wash.App. 889, 896, 827 P.2d 311 (citations omitted), review denied, 120 Wash.2d 1015, 844 P.2d 436 (1992).
This is not a sanctions case; rather, it is a case pertaining to the case management powers of the trial courts. Even if we were to analyze this case as a sanctions case, the trial court here did not abuse its discretion under Fisons. See Hampson v. Ramer, 47 Wash.App. 806, 813, 737 P.2d 298 (1987) (the choice of sanctions for a discovery violation is discretionary and the particular facts and circumstances of each case will determine whether the discretion has been abused), citing Anderson v. Mohundro, 24 Wash.App. 569, 574, 604 P.2d 181 (1979), review denied, 93 Wash.2d 1013 (1980).
Contrary to the majority's view, the trial court did not impose the most severe sanctiondismissal of the Burnets' complaint. It merely adhered to its case management order, but left open the possibility the Burnets could seek modification of the CR 16/CR 26(f) order or move to amend their complaint under CR 15.
In the context of CR 37 sanctions, the trial court does not abuse its discretion by excluding testimony as a sanction when there is a showing of intentional or tactical nondisclosure, willful violation of a court order, or other unconscionable conduct. Allied Fin. Servs., Inc. v. Mangum, 72 Wash.App. 164, 168, 864 P.2d 1, 871 P.2d 1075 (1993), citing Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wash.2d 693, 706, 732 P.2d 974 *1049 (1987), and Alpine Indus., Inc. v. Gohl, 30 Wash.App. 750, 760, 637 P.2d 998, 645 P.2d 737 (1981), review denied, 97 Wash.2d 1013 (1982). A violation of a court order without reasonable excuse will be deemed willful. Allied Fin. Servs., 72 Wash.App. at 168, 864 P.2d 1, 871 P.2d 1075, citing Lampard v. Roth, 38 Wash.App. 198, 202, 684 P.2d 1353 (1984); Anderson, 24 Wash.App. at 574, 604 P.2d 181. See also Snedigar v. Hoddersen, 114 Wash.2d 153, 169, 786 P.2d 781 (1990), and Hampson, 47 Wash.App. at 811, 737 P.2d 298, both citing Taylor v. Cessna Aircraft Co., 39 Wash.App. 828, 836, 696 P.2d 28 (a violation of the discovery rules is willful if done without a reasonable excuse), review denied, 103 Wash.2d 1040 (1985). Here, as regards any negligent credentialing claim, the Burnets failed to comply with a discovery order (i.e. identify all expert witnesses and their opinions and make the same available for deposition within court imposed time limits) without reasonable excuse. The witnesses and opinions disclosed by the Burnets did not specifically address negligent credentialing. Under the above cited case law, such unexcused noncompliance with the discovery order is deemed willful, and thus, sanctionable.
Furthermore, it is reversible error for the trial court not to exclude testimony when the other party would be prejudiced by a willful violation of a court order. Allied Fin. Servs., 72 Wash.App. at 169 n. 4, 864 P.2d 1, 871 P.2d 1075, citing Hampson, 47 Wash.App. at 812, 737 P.2d 298. As aptly stated by the Hampson court:
No reasonable excuse has been put forth here. Absent such an excuse, the noncompliance with discovery may be deemed to be willful under Taylor v. Cessna Aircraft Co., supra. Where a willful noncompliance with discovery substantially prejudices the opponent's ability to prepare for trial, the exclusion of evidence is not an abuse of discretion. Lampard v. Roth, supra; Associated Mortgage Investors v. [G.P.] Kent Constr. Co., Inc., 15 Wash.App. 223, 228-29, 548 P.2d 558, review denied, 87 Wash.2d 1006 (1976).
Hampson, 47 Wash.App. at 812, 737 P.2d 298. Because the Burnets failed to timely disclose expert witnesses regarding their negligent credentialing claim, Sacred Heart was foreclosed by the discovery order from deposing the expert witnesses on this newly revived theory.
Finally, the trial court did not impose the most severe sanction of dismissal or default. Therefore, the majority's concern that the trial court failed to explicitly consider on the record a less severe sanction is misplaced. In Snedigar v. Hoddersen, 114 Wash.2d 153, 170, 786 P.2d 781 (1990), we stated:
... the trial court should make clear on the record whether the factors of willfulness and prejudice are present before considering entry of a default order. The trial court also should state whether lesser sanctions would be effective and why it is imposing an order of default. As the Court of Appeals observed, these steps are routinely followed by the federal courts and should be employed by Washington courts when dismissal is imposed as a sanction for violating a discovery order in a First Amendment case.
(Emphasis added.) Preclusion of claims or defenses is a less drastic alternative to the sanction of dismissal. See Malone v. U.S. Postal Serv., 833 F.2d 128, 132 n. 1 (9th Cir.1987), cert. denied, 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988).
In Allied Fin. Servs., 72 Wash.App. 164, 864 P.2d 1, 72 Wash.App. 164, and Dempere v. Nelson, 76 Wash.App. 403, 886 P.2d 219 (1994), review denied, 126 Wash.2d 1015, 894 P.2d 565 (1995), which postdate Fisons, the Court of Appeals upheld the imposition of severe sanctions for violation of discovery rules by trial courts. In Allied Fin. Servs., the trial court excluded witnesses because the defendant had failed to identify any witnesses and gave no explanation for such a failure. In Dempere, the trial court excluded a witness that a party identified only 13 days before trial. The trial court's decision was consistent with these cases.

CONCLUSION
The trial court properly managed the case before it and did not abuse its discretion in the handling of discovery under our civil *1050 rules and the case law derived from those rules. Trial courts are on the front lines of our civil justice system, dealing with sometimes recalcitrant attorneys and the myriad considerations of prosecuting a case. The trial courts develop intimate knowledge of cases from such involvement and they should be permitted to manage the discovery process and we should not disturb such management unless the record indicates the trial court has clearly abused its discretion. Here, the record does not indicate the trial court abused its discretion in entering the July 8, 1991 pretrial order. We must affirm the decision of the trial court.
Citing CR 1, the majority states "our overriding responsibility is to interpret the rules in a way that advances the underlying purpose of the rules, which is to reach a just determination in every action." Majority op. at 1042. Indeed, our charge is this and more. CR 1 states "... [the civil rules] shall be construed to secure the just, speedy and inexpensive determination of every action." The situation is serious for our entire judicial system. Litigation is not intended to be a life-long activity with litigants returning endlessly to our courts. This case has proceeded from 1984 to the present time through various theories against various defendants and has been characterized by what is charitably described as "obstreperous" conduct of counsel. Trial courts must manage cases, as our civil rules envision, to prevent lawyers' tactics from hindering swift and fair resolution of controversies and to give strong direction to litigants to move cases through our system. We should not tolerate tactics delaying disposition of civil cases for over a decade. We should give ample tools to trial court judges to make sure the lawyers and parties do not use our civil rules to delay resolution of issues on their merits.
Too often, cases in which trial court judges exercise firm case management are reversed by this Court or other appellate courts. Unfortunately, the majority opinion sends the message to trial court judges that this Court gives only lip service to strong case management by trial judges. This Court should instead send a resounding message to trial courts, lawyers, and parties: we do not condone "obstreperous" conduct of counsel, we support firm case management by Washington's trial judges, and we will not permit litigation to languish forever in our courts.
DURHAM, C.J., and DOLLIVER, J., concur.
NOTES
[1] Although the motion for a discovery conference was nominally initiated pursuant to CR 26, General Provisions Governing Discovery Conference and CR 16, Pretrial Procedure and Formulating Issues, Sacred Heart's memorandum in support of the motion and its oral argument to the trial court focused almost exclusively on its contention that "the negligent credentialing claim is not properly pleaded and could not properly be pleaded at this time." CP at 2394.
[2] Although the Burnets identified seven separate issues in their petition for review, their brief addresses only the question of whether the Court of Appeals erred in affirming the trial court's order limiting discovery on the issue of corporate negligence. This court will not address these other "issues" because they have not been properly briefed. State v. Brett, 126 Wash.2d 136, 205, 892 P.2d 29 (1995) (Supreme Court may, pursuant to RAP 10.3(a)(5), decline to address issues presented upon argument incorporated from the petitioner's brief on appeal to the Court of Appeals), cert. denied, ___ U.S.___, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).
[3] At oral argument before this court, Sacred Heart represented that the basis of the motion was CR 16, a rule providing for a pretrial conference to consider

"... simplification of the issues;
"... desirability of amendments to the pleadings;
".... "... [and] other matters as may aid in the disposition of the action." CR 16(a)(1), (2), (5). This rule also grants discretion to the trial court to "make an order which recites the action taken at the conference," including an order "which limits the issues for trial to those not disposed of by admissions or agreements of counsel[.]" CR 16(b). Significantly, there is no evidence in the extensive record before us that counsel for the Burnets agreed to limit the issues for trial. We also note that Sacred Heart's shift in emphasis during oral argument essentially eschewed the reliance it placed on CR 26 in its memorandum in support of its motion, at oral argument to the trial court on that motion, in its brief to the Court of Appeals, as well as in its briefing to this court. This emphasis on CR 26, rather than CR 16 was also acknowledged by the Court of Appeals. See Burnet, slip op. at 9-10 (Sacred Heart "had sufficient notice to bring its CR 26(f) motion to limit discovery.")
[4] We note that although prejudice to the non-wrongdoing party "is not a prerequisite to the court's exclusion of witnesses as a sanction for a party's willful failure to submit a witness list," it may be a consideration in other circumstances. Allied, 72 Wash.App. at 169, 864 P.2d 1, 871 P.2d 1075 (citing Miller v. Peterson, 42 Wash. App. 822, 825, 714 P.2d 695, review denied, 106 Wash.2d 1006 (1986)) (emphasis added).
[5] In granting the order that we are reviewing, the trial court was guided by its conclusion that the claim was outside the scope of the Burnets' pleading. No doubt it did not consider alternative sanctions because it did not view the order as a falling under the rubric of a sanction. Nevertheless, in reviewing the decision of the Court of Appeals that the order was justified as a sanction for the Burnets' lack of "compliance ... with a scheduling order" we are called upon to determine whether the record and law support its conclusion.
[1] Commentators and studies suggest one of the principal grounds for delayed justice is the failure of trial courts to exercise firm case management. See, e.g., 28 U.S.C.A. § 471 (West 1993) (historical and statutory notes; congressional statement of findings). Congress enacted, in response to the problems arising from increased discovery, the Civil Justice Reform Act of 1990, 28 U.S.C.A. § 473(a), which mandates the early and on-going judicial management of the pretrial process and includes judicial control of the extent and time of discovery; Fed.R.Civ.P. 16 advisory committee's 1993 amendment note:

"Empirical studies reveal that when a trial judge intervened personally at an early stage to assume judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps, the case is disposed of by settlement or trial more efficiently and with less cost and delay than when the parties are left to their own devices. Flanders, Case Management and Court Management in United States District Courts 17, Federal Judicial Center (1977)."
Kent Sinclair, Patrick Hanes, Summary Judgment: A Proposal for Procedural Reform in the Core Motion Context, 36 WM. & MARY L. REV. 1633, 1636-50 (1995) (for at least two decades, the Federal Judicial Center has taught new federal judges that active judicial managementcharacterized by strict time deadlines and firm "control" of the litigationshortens disposition times and lowers the pending docket of open cases; when judges appropriately exercise their authority to adjudicate whole cases or issues in pretrial practice, docket efficiency is enhanced and justice is promoted); Steven Flanders, Blind UmpiresA Response to Professor Resnik, 35 HASTINGS L.J. 505, 516-20 (1984) (a modest degree of judicial control greatly reduces the time during which a case is pending, the author presents tables on various case types showing extraordinarily wide differences in disposition time as a result of degree of case management applied by the court; and indicating that delay in civil cases is substantially controllable).
[2] I agree with the Court of Appeals and the majority, Majority op. at 1039-1040, that the trial court erred when it found the negligent credentialing theory of corporate negligence was not properly pleaded by the Burnets.

However, it is easy to see how the mistake was made. The plaintiffs initially asserted an improper credentialing theory as part of their Consumer Protection Act claim. The trial court dismissed the claim and the Court of Appeals affirmed the dismissal, stating:
The Burnets contend they presented a question of fact regarding Dr. Graham's asserted "deceptive practice" of holding himself out as a pediatric neurologist when he was not board certified. They rely on the advertisement in the telephone book and construe it to be a purposeful solicitation of pediatric neurology patients for entrepreneurial purposes, citing Quimby v. Fine, 45 Wash.App. 175, 724 P.2d 403 (1986), review denied, 107 Wash.2d 1032 (1987). They further claim the CPA [Consumer Protection Act] also applies to Sacred Heart, because it allowed Dr. Graham hospital privileges as a pediatric neurologist even though he was not board certified to provide that type of care.
....
Neither claim asserted by the Burnets against Sacred Heart involves the entrepreneurial aspect of the hospital's operation, so they fall outside the scope of the CPA. This would include the assertion Sacred Heart allowed Dr. Graham hospital privileges in order to draw a large clientele.
With respect to Dr. Graham, the Burnets have failed to show board certification is required by Washington law and have failed to show a board certified neurologist is any more qualified than a certified pediatrician who has completed additional study in neurology. There is no evidence Dr. Graham held himself out as board certified nor that the Burnets relied on that qualification when choosing him as Tristen's physician. Finally, there is nothing in their argument which relates to Dr. Graham's entrepreneurial practices. Their claim encompasses negligence only. Thus, the CPA action against him was properly dismissed.
Burnet, 54 Wash.App. at 166-67, 772 P.2d 1027. The Burnets did not again assert this theory of negligence against Sacred Heart until their April 18, 1991 supplemental interrogatory answers, filed more than four months after the deadline for expert witness disclosure and two months after the cutoff for deposing such experts.
[3] The trial court labored under the misconception that the Burnets had not properly pleaded negligent credentialing. However, its July 8, 1991 order did not preclude them from moving under CR 15 to amend their complaint to assert a negligent credentialing theory. They did not properly or successfully move to amend prior to trial.
[4] The majority's position that a motion to modify the pretrial order would have been a useless act by the Burnets, Majority op. at 1043, is pure speculation. Because the Burnets never moved to modify the pretrial order we will never know whether the trial court would have granted the motion.