IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | No. 30452-3-III |
| | ) | |
| KENNETH J. NICHOLS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| GLORIA D. NICHOLS, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, C.J. — Kenneth Nichols and Gloria Nichols [1] dissolved their marriage after three years. Their marriage produced one child, N.N. This appeal concerns the parenting plan for N.N., evidentiary rulings excluding evidence, and the characterization of one bank account as community property. We affirm the placement and the evidentiary rulings, but reverse the characterization of the bank account.

---

[1] We use first names for convenience.

FACTS

Trial of this dissolution primarily revolved around the parenting plan for N.N. During the pretrial proceedings the trial court received allegations from multiple sources that Gloria regularly physically and verbally abused her two children from a prior marriage. There also was evidence of a domestic dispute during which Gloria shoved Ken into a door, resulting in Ken obtaining a protective order against Gloria. Ken had primary placement of N.N. throughout the dissolution, with Gloria having near equal residential time.

The guardian ad litem (GAL) appointed to represent N.N.'s interests investigated these allegations. The GAL implied that most of the abuse allegations were either unsubstantiated or not as severe as alleged. Ken could not perform his own investigation into the abuse claims because Gloria obtained an order in the dissolution proceeding involving her first husband that prohibited her two older children from aiding Ken in this action.[2] The GAL did find that Gloria has an emotional control/anger problem and the court commissioner ordered her to get counseling; she did not comply with the order.

The GAL found N.N. to be well bonded with both parents, and also found that both parents were capable of providing appropriate care and attention. Despite Gloria's need for counseling, N.N. had bonded best with her, and there was no substantiated

---

[2] This court finds it troubling that a judge in one proceeding would willingly prohibit witnesses from giving evidence in another proceeding. However, Ken did not challenge this ruling.

evidence that she had ever acted out against N.N. Accordingly, the GAL's final report recommended primary placement with Gloria.

After the discovery cutoff date, Ken sought to take depositions of the GAL, Gloria, and Gloria's domestic violence advocate.[3] Ken sought to excuse his belated request on the grounds that he believed that LSPR 94.05(e) prevented him from conducting discovery prior to the GAL entering her final report and because of new allegations that Gloria had abused her older children. Although ruling that the local rule did not actually prevent Ken from conducting discovery earlier, the court still allowed Ken to take the GAL's deposition. The court denied the request to take Gloria's deposition because the evidence could be obtained at trial. The court declined to allow the advocate's deposition on the basis of privilege.

Around this same time, Ken belatedly filed his witness list; he blamed his tardiness on difficulties getting Gloria's attorney to meet and file the joint pretrial report that was supposed to include both parties' witness lists. The trial judge required strict compliance with the scheduling order and excluded all of Ken's witnesses on direct examination. However, the judge left open the possibility of their use as rebuttal witnesses. Ken did not call any witnesses in rebuttal.

Following trial the court entered an order adopting the GAL's placement and counseling recommendations. The court also found that assets in several bank accounts that Ken owned prior to marriage had become community property due to comingling

---

[3] The commissioner had also ordered Gloria to undergo domestic violence perpetrator treatment. Instead, Gloria sought out a domestic violence victim's advocate.

and ordered equal division of those accounts. Following entry of these orders, Ken timely appealed to this court.

## ANALYSIS

Ken challenges the decision to award primary placement of N.N. to Gloria, the discovery rulings, and the court's characterization of the funds in the bank accounts. We discuss the issues in the listed order.

Challenges to the trial court's final parenting plan are reviewed for abuse of discretion. *Mansour v. Mansour*, 126 Wn. App. 1, 8, 106 P.3d 768 (2004). A court abuses its discretion if, inter alia, "its decision is outside the range of acceptable choices given the facts and the legal standard." *Id.* (quoting *In re Marriage of Wicklund*, 84 Wn. App. 763, 770 n.1, 932 P.2d 652 (1996)).

Ken argues that the trial court acted outside the range of available options by not limiting Gloria's decision-making authority and residential time in accordance with RCW 26.09.191. That statute prohibits mutual decision-making and requires limited residential time in any case in which it is found that a parent has engaged in "physical, sexual, or a pattern of emotional abuse of a child" or "a history of acts of domestic violence as defined in RCW 26.50.010(1)." RCW 26.09.191(1), (2)(a).[4]

---

[4] As relevant here, "domestic violence" means "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 26.50.010(1). Family includes both "spouses" and "persons who have a biological or legal parent-child relationship." RCW 26.50.010(2).

In *Mansour*, the lower court abused its discretion by not applying RCW 26.09.191 after it had found that the father engaged in physical abuse of a child. *Mansour*, 126 Wn. App. at 6. Ken strenuously argues that the statute and *Mansour* require reversal here in light of the evidence that Gloria was abusive. However, they do not apply to this case because the trial court never found the existence of child abuse or domestic violence. While the record contains several alarming allegations of child abuse and domestic violence, it does not appear that the trial court found those allegations credible or else did not believe that they amounted to a "pattern of emotional abuse" or a "history of domestic violence." Accordingly, the trial court did not abuse its discretion by declining to apply the provisions of RCW 26.09.191.

Ken next argues that the trial court abused its discretion by excluding his witnesses on direct examination and by not permitting him to take Gloria's deposition and the advocate's deposition.[5] "[A] trial court has broad discretion as to the choice of sanctions for violation of a discovery order." *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). "Such a 'discretionary determination should not be disturbed on appeal except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *Assoc. Mortg. Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548

---

[5] We reject Ken's argument that LSPR 94.05(e) prevented him from making timely discovery as unsupported by the plain language of the local rule. We also reject as harmless the refusal to allow the depositions. Ken never attempted to explain what he could have gained by deposing Gloria that he did not gain by cross-examining her at trial. With respect to the advocate, Ken never explained how he intended to bypass the domestic violence advocate privilege found in RCW 5.60.060(8).

P.2d 558 (1976)). However, exclusion of witnesses is only permissible where the court has considered on the records whether lesser sanctions would suffice. *Burnet*, 131 Wn.2d at 497. Ken has a colorable claim of abuse of discretion under *Burnet* since the court never explained why exclusion of witnesses was the appropriate remedy here. However, we cannot say that Ken has met his heavy burden of showing an abuse of discretion in light of the fact that he never raised the *Burnet* argument to the court in a timely manner. A trial court cannot abuse discretion that it was not asked to exercise. *Colorado Structures v. Blue Mountain*, 159 Wn. App. 654, 660, 246 P.3d 835 (2011).

Finally, Ken argues that the trial court finding that his separate property had transmuted to community property is not supported by sufficient evidence. We agree.

Property acquired prior to marriage or afterward by gift, bequest, devise, decent, or inheritance is presumed to be separate. RCW 26.16.010; *In re Estate of Borghi*, 167 Wn.2d 480, 483, 219 P.3d 932 (2009). The separate property presumption can only be rebutted by clear and convincing evidence of conversion to community property. *Id.* at 490. "[O]nly when money in a joint account is hopelessly commingled and cannot be separated is it rendered entirely community property." *In re Marriage of Skarbek*, 100 Wn. App. 444, 448, 997 P.2d 447 (2000). "If the sources of the deposits can be traced and identified, the separate identity of the funds is preserved." *Id.*

Here, Ken came to the marriage with a substantial amount of cash that he deposited in Wells Fargo bank accounts. Accordingly, the cash is presumed to be separate property. When Ken and Gloria married, he added her name to two of the four

accounts at issue (#3823 and #0670). The couple always maintained relatively low balances in these accounts, except that Ken deposited his paycheck into the one used for household and other miscellaneous expenses (#3823). Ken maintained the bulk of his cash in two other accounts to which he never added his wife (#4444 and #4586). Review of the bank statements over the three years of the marriage shows that Ken made several transfers from his individual accounts to cover expenses in the joint accounts and minimal transfers from the joint accounts back to the individual accounts.

The fact that this court has three years of bank statements and can count the transfers back and forth shows that the money in these accounts are "clearly traceable" and not "hopelessly comingled." The fact that Ken made transfers between these joint and individual accounts did not in itself permit the trial court to recharacterize as community property Ken's separate assets, especially when considering that Ken's individual accounts always maintained a large base of funds that greatly exceeded the total amount of all transfers between the accounts. Because the assets in account numbers 4586 and 4444 (prior to it being closed) are clearly traceable, they remained Ken's separate property and the court erred in treating them as community assets. We reverse that aspect of the court's ruling and remand for reconsideration of the property award. *Skarbek*, 100 Wn. App. at 445.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

7

No.30452-3-III
*In re Marriage of Nichols*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____                    _____
Kulik, J.                                                                      Siddoway, J.

8