[No. 21270-2-I.   Division One.   February 21, 1989.]

RICHARD W. SNEDIGAR, *Respondent*, v. GUERRY
HODDERSON, ET AL, *Appellants*.

*Valerie A. Carlson, Frederick W. Hyde,* and *Daniel H. Smith,* for appellants Hodderson, et al.

*Clara Fraser,* pro se.

*Thomas S. Wampold, Bovy, Wampold & Munro,* and *Michelle Pailthorp,* for respondent.

*Paul Parker* and *Janet Varon* on behalf of National Lawyers Guild and *Michael W. Gendler* on behalf of the American Civil Liberties Union, amici curiae for appellants.

WINSOR, J.—Defendants, consisting of the Freedom Socialist Party and several of its members (hereinafter collectively referred to as FSP), appeal from an order partially denying FSP's motion for summary judgment, an order compelling discovery, an order striking FSP's answer, an order of default, and a default judgment. We affirm in part and reverse in part.

Richard Snedigar belonged to the Freedom Socialist Party (the Party) from 1974 until September 1980. During

that period, the Party was headquartered in Freeway Hall, which it rented from Ivar Haglund. In November 1978, Haglund served the Party with a notice terminating tenancy. The Party declared an emergency and began actively soliciting contributions to a fund established for the purpose of renting or purchasing new headquarters. The Party was able to negotiate rental extensions with Haglund, although threats of eviction continued until at least February 1980.

In response to the 1978 declaration of emergency, Snedigar refinanced his home and in June 1979, contributed $22,500 of the refinancing proceeds to the Party. The Party thanked Snedigar in writing for his contribution to the "Emergency Eviction Fund".

Snedigar actively participated in the search for new headquarters and located properties which he believed were appropriate. The Party rejected each of his recommended purchases. Snedigar became disillusioned and resigned from the Party in September 1980. The Party did not purchase a new facility until 1985.

Snedigar verbally asked a party member for return of his $22,500 contribution in spring 1981, but did not get a direct response. By letter dated July 12, 1983, Snedigar made written demand for return of the contribution. The Party refused his demand.

Snedigar filed a complaint for damages in January 1984. FSP substantially denied Snedigar's claims and counterclaimed against him. FSP then moved for summary judgment of dismissal. The trial court granted FSP's motion as to three of Snedigar's claims, but refused to dismiss Snedigar's breach of contract, void contract, misrepresentation, conditional gift, undue influence, and constructive trust claims.

In March 1985, Snedigar moved for an order compelling discovery. The trial court partially granted his motion, with the provision that FSP "shall not be required to disclose the names of FSP members or contributors." Snedigar subsequently moved to compel compliance with this order.

This time the trial court ordered that FSP "shall produce all information previously requested, and requested in the future" (hereinafter the April 1985 order).

This court granted discretionary review of the April 1985 order. By a per curiam opinion filed in September 1985, we held that the April 1985 order was overly broad, and directed the trial court to weigh Snedigar's need for information against the harm to the Party claimed by FSP. The trial court was also directed to conduct in camera hearings, if necessary, and to issue appropriate protective orders.

In October 1985, Snedigar again moved to compel discovery. FSP had refused to comply with the following requests for production of documents:

1. Please provide all minutes of Freedom Socialist Party having to do with the findings, location and search for an alternate to Freeway Hall.

. . .

2. Please provide all minutes referring to the emergency.

FSP objected to these requests as unconstitutional.

At the hearing on Snedigar's motion, the trial court asked FSP to explain the basis of its objections. FSP asserted that production of the requested minutes would have a "chilling effect" on its constitutional rights in that disclosure would prevent free expression in future meetings. Relying in part on the September 1985 per curiam opinion, the trial court ordered that at a minimum, FSP was to submit the requested minutes to the motions judge, with names deleted, for an in camera inspection.

FSP sought review of this order (hereinafter the October order) both in this court and in the Washington Supreme Court.[1] Although both courts denied review, FSP continued to claim a constitutional privilege and refused to comply with the October order. On Snedigar's motion, the trial court sanctioned FSP for its noncompliance by imposing an

---

[1]We stayed enforcement of the October 1985 order until FSP's attempts to obtain review of our September 1985 opinion were complete.

order of default and dismissing all defendants' counter-claims. Following an evidentiary hearing, the court entered a default judgment against FSP.

## SUMMARY JUDGMENT ORDER

FSP contends the trial court erred in refusing to dismiss Snedigar's contract and tort claims upon FSP's motion for summary judgment. It contends these claims should have been dismissed because: (1) Washington courts lack jurisdiction over the internal affairs of political parties; (2) Snedigar's claims are barred by the statute of limitation; and (3) Snedigar's claims are unsupported by the undisputed facts. We affirm the summary judgment order.

■ FSP's first contention, that the court lacked jurisdiction over Snedigar's claim, misapprehends the scope of the rule that courts will not interfere in the internal affairs of political parties. Although courts decline jurisdiction over claims concerning a political party's internal or political disputes, there is no question that courts may entertain claims involving a party's legal disputes. Annot., *Determination of Controversies Within Political Party*, 20 A.L.R. 1035 (1922); *accord, Steele v. Johnson*, 76 Wn.2d 750, 753, 458 P.2d 889 (1969) ("[t]here is no rule of law . . . that prevents a political party from making contracts, nor is there any rule that immunizes them from liability for tortious conduct"). Here, Snedigar has raised contract and tort claims with little apparent relation to FSP's political activities or internal affairs. The trial court therefore properly exercised jurisdiction over Snedigar's claims.

FSP next argues that Snedigar's case should be dismissed because his claims are barred by RCW 4.16.080(4), which imposes a 3–year statute of limitation for claims based on fraud.[2] In actions based on fraud, RCW 4.16.080(4) does not begin to run until the plaintiff learns of, or in the exercise of reasonable diligence should have learned of, the

---

[2]Fraud, for purposes of RCW 4.16.080(4), includes innocent misrepresentations as well as intentionally false statements. *Western Lumber, Inc. v. Aberdeen*, 10 Wn. App. 325, 326–27, 518 P.2d 745 (1973).

facts which gave rise to the cause of action. RCW 4.16-.080(4); *e.g., Viewcrest Coop. Ass'n v. Deer,* 70 Wn.2d 290, 295, 422 P.2d 832 (1967).

Viewed in the light most favorable to Snedigar, the nonmoving party, the evidence reveals the presence of material, disputed facts concerning when Snedigar discovered the information giving rise to his cause of action, and thus when RCW 4.16.080(4) began to run. The principal allegation underlying Snedigar's claims is that at some point FSP converted the "Emergency Eviction Fund" to a fund devoted to the less pressing purpose of finding better headquarters. The record does not clearly establish when Snedigar discovered that this alleged conversion occurred. Discovery could have been as early as September 1980, when Snedigar resigned from the Party, or as late as July 1983, when Snedigar made written demand for return of his contribution. The presence of this material, factual issue precludes summary judgment of dismissal on statute of limitation grounds. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Third, FSP contends that it was error not to dismiss Snedigar's complaint because the undisputed facts do not support his claims. A review of the record supports the trial court's decision not to dismiss Snedigar's action on this basis. The record contains facts from which a reasonable trier of fact could infer that Snedigar was entitled to return of his contribution under either a theory of constructive trust, or a theory of undue influence.

We affirm the order of partial summary judgment.

### OCTOBER 1985 DISCOVERY ORDER

FSP's principal contention on appeal is that the October 1985 discovery order infringed on its constitutionally protected rights of association, privacy, and free speech. The allegedly unconstitutional order required FSP to submit minutes concerning the search for "an alternate to Freeway Hall", and concerning the "emergency", for in camera

inspection. The order permitted FSP to delete any names appearing in the minutes submitted.

A succinct analysis of case law addressing the application of First Amendment privileges to discovery disputes is set out in *Wilkinson v. FBI,* 111 F.R.D. 432 (C.D. Cal. 1986). Citing *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958), the *Wilkinson* court noted that it is settled that a qualified First Amendment privilege to discovery requests does exist. The *Wilkinson* court described the analysis used in First Amendment privilege cases:

> While it is clear that the privilege may be asserted with respect to specific requests for documents raising . . . core associational concerns, it is equally clear that the privilege is not available to circumvent general discovery. . . .
>
> . . . Under this privilege, once a litigant has raised a substantial claim by showing that the discovery request is directed at the heart of a group's protected associational activities, the court is required to subject the request to a higher level of scrutiny. The privilege is qualified, not absolute; therefore, it cannot be used as a blanket bar to discovery. Instead, the Court must apply a balancing test to the dispute at issue, essentially requiring both a heightened degree of relevance to the subject matter of the suit and a showing by the party seeking discovery that it has made reasonable, unsuccessful attempts to obtain the information elsewhere.

(Footnote and citations omitted.) *Wilkinson,* 111 F.R.D. at 436; *accord, Savola v. Webster,* 644 F.2d 743, 746 (8th Cir. 1981).

Washington courts have not directly addressed First Amendment privileges in a discovery context. However, we have used an analysis similar to that described in *Wilkinson* to determine whether a reporter's qualified common law privilege against compulsory disclosure of news sources should provide protection from discovery requests. *State v. Rinaldo,* 102 Wn.2d 749, 754–55, 689 P.2d 392 (1984); *Senear v. Daily Journal–American,* 97 Wn.2d 148, 155–56, 641 P.2d 1180 (1982).

■ We adopt the analytical framework of *Wilkinson, Rinaldo,* and *Senear* and hold that trial courts should use the approach set out below to decide whether First Amendment privileges preclude or limit disclosure of materials sought through discovery. First, the party asserting the privilege must make an initial showing that disclosure of the materials requested would in fact impinge on First Amendment rights. For example, if it is asserted that disclosure of the requested information would have a chilling effect on speech, organizations ordinarily would be required to allege facts establishing that there is a reasonable probability that disclosure will lead to reprisal or harassment directed against the organization or its members. *Cf. Buckley v. Valeo,* 424 U.S. 1, 74, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1976); *Black Panther Party v. Smith,* 661 F.2d 1243, 1267–68 (D.C. Cir. 1981), *vacated,* 458 U.S. 1118, 73 L. Ed. 2d 1381, 102 S. Ct. 3505 (1982).

Once this preliminary showing of privilege is made, the burden then shifts to the party seeking discovery to establish the relevancy and materiality of the information sought, and to make a showing that reasonable efforts to obtain the information by other means have been unsuccessful. *Association for Reduction of Violence v. Hall,* 734 F.2d 63, 66 (1st Cir. 1984) (the party seeking discovery must make a threshold showing of need amounting to more than "mere speculation"); *see also Rinaldo,* 102 Wn.2d at 755, 759 (Rosellini, J., concurring in part, dissenting in part).

If this burden is met, it is for the trial court to balance the parties' competing claims of privilege and need. At this stage, the trial court may order an in camera inspection of the requested information to better ascertain the strength of the parties' competing claims, and decide whether, and to what extent, discovery of the requested materials is appropriate. *Association for Reduction of Violence,* 734 F.2d at 66; *cf. Whetstone v. Olson,* 46 Wn. App. 308, 311–12, 732 P.2d 159 (1986) (discussing when an in camera

hearing is appropriate when an attorney–client privilege is asserted).

In reviewing the October order, we first address whether FSP made the necessary threshold showing that the information sought falls within the protection of the First Amendment, *i.e.*, whether its release would impact the exercise of freedom of speech, freedom of association, or freedom of the press. In so doing, we stress what this case is not: this is not a case in which discovery of membership, contributors, or internal organization is sought. It is not a case in which a hostile government agency or legislative committee seeks information regarding the internal affairs of a minority political party. It is not a case in which FSP's politics or organization are at issue. Rather, this case involves only the discovery of information related to a private party's monetary claim sounding in unjust enrichment and breach of trust.

The majority of cases in which a First Amendment privilege from discovery has been found concern requests for a group's membership list or its list of financial contributors. *E.g., NAACP v. Alabama ex rel. Patterson, supra* (identity of rank and file members); *Federal Election Comm'n v. Machinists Non–Partisan Political League,* 655 F.2d 380 (D.C. Cir.) (list of all members and volunteers of "draft–Kennedy" groups), *cert. denied,* 454 U.S. 897, 70 L. Ed. 2d 213, 102 S. Ct. 397 (1981); *Savola v. Webster, supra* (names and addresses of Minnesota Communist Party members); *Adolph Coors Co. v. Wallace,* 570 F. Supp. 202 (N.D. Cal. 1983) (identity of members of Solidarity, a political organization comprised exclusively of gay men and lesbian women); *Pollard v. Roberts,* 283 F. Supp. 248 (E.D. Ark.) (identity of political party contributors and amounts contributed), *aff'd,* 393 U.S. 14, 21 L. Ed. 2d 14, 89 S. Ct. 47 (1968). The discovery requests at issue here differ markedly from those addressed in these cases.

Other cases in which a First Amendment privilege from discovery has been allowed have involved broad, intrusive discovery requests. In *Federal Election Comm'n v.*

*Machinists Non–Partisan Political League, supra,* the principal case relied on by FSP, the court found a First Amendment privilege protected a political group's internal minutes and other communications concerning its "decisions 'to support or oppose any individual in any way for nomination or election to the office of President in 1980'". 655 F.2d at 388. The *Machinists* court described this information as material representing "the very heart of the organism which the first amendment was intended to nurture and protect: political expression and association concerning federal elections and officeholding." *Machinists,* at 388. *Federal Election Comm'n v. Florida for Kennedy Comm.,* 681 F.2d 1281 (11th Cir. 1982) is also instructive. In that case, the requested information included documents relating to conversations with other political committees, the committees' formation, structure and staff assignments, documents relating to fund raising, travel, internal rules and policies, as well as membership lists. 681 F.2d at 1283 n.3.

Snedigar's discovery request is considerably less intrusive than those found to impermissibly infringe on constitutional rights in *Machinists* and *Florida for Kennedy,* and is far more narrowly drafted. Unlike the requesting party in those cases, Snedigar seeks discovery of only those FSP minutes directly related either to the continuing "emergency" or to the hall search. This information presumably relates to a portion of the Party's day to day business activities, rather than to any form of political expression.

At the trial court level, FSP asserted that production of the requested minutes would have a "chilling effect" on its constitutional rights in that disclosure would prevent free expression in future meetings. However, FSP offered no evidence showing why or how disclosure of the requested information would "chill" free expression.[3] On appeal, FSP

---

[3]FSP recognized its need to make a threshold showing of First Amendment infringement in its memorandum opposing Snedigar's discovery motion, and relied on the affidavit of FSP member Guerry Hodderson to make that showing.

made conclusory allegations that disclosure would infringe on free expression because the information sought is "inextricably bound up with discussions of political priorities, goals, strategies, tactics, personnel, and finances". We acknowledge that in some situations this could be a valid concern. In the instant case, however, there is simply no record evidence supporting FSP's allegation.

We hold that FSP did not satisfy its threshold burden of establishing that the particular information sought is constitutionally privileged. We therefore do not reach the sufficiency of Snedigar's showing of relevance. The discovery order of October 1985 is affirmed.

## SANCTIONS

FSP next assigns error to the trial court's entry of the order of default and dismissal of counterclaims. This order was entered on Snedigar's motion, as a result of FSP's continuing refusal to comply with the October discovery order.

CR 37(b)(2) permits a trial court to order sanctions when a party or its attorney violates a discovery order. The rule enumerates a variety of sanctions which the trial court may employ in fashioning its order. Generally, the choice of which sanction to employ is within the trial court's discretion. *E.g., Rhinehart v. KIRO, Inc.,* 44 Wn. App. 707, 710, 723 P.2d 22 (1986), *review denied,* 108 Wn.2d 1008, *appeal dismissed sub nom. Rhinehart v. Tribune Pub'g Co.,* 484 U.S. 805, 98 L. Ed. 2d 16, 108 S. Ct. 51 (1987).

---

The Hodderson affidavit states that FSP members and supporters have, in the past, been subjected to harassment and reprisals as a result of their association with the Party. The trial court's order addressed this concern by permitting FSP to delete names from the minutes at issue.

Following entry of the discovery order, FSP moved for reconsideration and attempted to make a stronger threshold showing of constitutional privilege. In support of that motion, FSP submitted affidavits from members of several other organizations and one of its own members. These affidavits reiterated FSP's argument that the threat of potential disclosure of minutes would have a chilling effect on freedom of expression. None, however, addressed the effect disclosure of the particular minutes requested by Snedigar, with names deleted, might have.

■ The trial court's discretion is not without limits. The rule specifically provides that the order must be "just." CR 37(b)(2). Due process considerations also require that before a trial court dismisses an action or counterclaim, or renders a judgment by default, there must have been "a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for trial." *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 228–29, 548 P.2d 558, *review denied*, 87 Wn.2d 1006 (1976).[4]

Federal courts have made sound rulings concerning imposition of CR 37(b)(2) sanctions. Generally, they have held that when the most severe sanction of default or dismissal is imposed, the trial court should explicitly consider whether lesser sanctions would probably cure the improper behavior and advance the deterrent aspects of CR 37. *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514–15 (5th Cir. 1985), *aff'd on remand*, 805 F.2d 546 (1986); *In re MacMeekin*, 722 F.2d 32, 35 (3d Cir. 1983). Because the choice of sanctions is entrusted to the trial court's discretion, federal courts also require that the reason for imposing a particular sanction be clearly stated on the record so that meaningful review may be had on appeal. *MacMeekin*, 722 F.2d at 34–36; *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 80 (3d Cir. 1982).

We adopt these rulings and hold that when a trial judge chooses one of the harsher remedies allowable under CR 37(b), the reasons for that choice should be clearly stated on the record. We further hold that when the most severe sanction of default or dismissal is ordered, it must be apparent from the record that the trial court explicitly considered whether a lesser sanction would probably have sufficed, and whether it found the *Associated Mortgage* due process factors to be present.

---

[4]The willfulness factor was clearly present in FSP's deliberate refusal to comply with the October discovery order. *Cf. Rhinehart v. Seattle Times Co.*, 51 Wn. App. 561, 577–78, 754 P.2d 1243, *review denied*, 111 Wn.2d 1025 (1988).

From the record before the court in the instant case, we cannot determine whether the trial court found the necessary *Associated Mortgage* factor of prejudice to Snedigar to be present. There is also no indication that the trial court considered any sanction other than default and dismissal. We therefore reverse the order of default and dismissal, and remand to the trial court for consideration of these factors on the record.[5] FSP shall be given an opportunity to comply with the October 1985 discovery order before sanctions are ordered against it.

The summary judgment order and discovery order are affirmed.[6] The default order is vacated, with the trial court directed to reconsider whether the sanctions of default and dismissal are necessary.[7]

COLEMAN, C.J., and REVELLE, J. Pro Tem., concur.

Reconsideration denied May 9, 1989.

Review granted at 113 Wn.2d 1006 (1989).

---

[5]If the trial court again decides that entry of a default order is appropriate, it may proceed with entry of a default judgment based upon the findings of fact and conclusions of law entered in conjunction with the prior default judgment. We have reviewed the record as it relates to the default judgment hearing, and find no error in the entry of judgment.

[6]The parties to this action have repeatedly attempted to read elements into court rulings that plainly are not present. We therefore add this footnote to make it clear that on remand, FSP may not reopen issues related to the October order or belatedly seek to bolster its showing of constitutional privilege.

[7]Additionally, we note from the record that confusion has ensued from the series of superior court judges who have dealt with this case in the past. We therefore recommend that on remand, the matter be assigned to one judge who will maintain jurisdiction until proceedings are completed in the superior court.