IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOSEPH B. GREEN, individually and as Personal Representative of the Estate of Kari Anna Green, | ) ) ) ) | No. 39300-3-III |
| Petitioner, | ) ) | |
| v. | ) ) | |
| KOOTENAI HEART CLINICS, LLC; KOOTENAI HOSPITAL DISTRICT dba KOOTENAI HEALTH, KOOTENAI HEART CLINICS, | ) ) ) ) ) | PUBLISHED OPINION |
| Respondents, | ) ) | |
| HEIDI SIIRILA; THE CITY OF SPOKANE; THE STATE OF WASHINGTON; CPM DEVELOPMENT CORPORATION aka INLAND ASPHALT COMPANY; and JOHN DOES, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

LAWRENCE-BERREY, C.J. — We granted discretionary review of the trial court's order that excluded three of plaintiff's witnesses from presenting testimony on damages. The court elevated disclosure deadlines above resolving the case on its merits, failed to consider any lesser sanction on the record, and placed the onus on the plaintiff for

defendants' failure to comply with the discovery rules.  We reverse.

FACTS

Kari Green was crushed by a Kootenai Heart Clinics delivery van after it stopped

and then turned left at an intersection.  Mere months before trial, Kootenai[1] admitted

liability.

The sole issue for trial is damages—primarily, when did Ms. Green lose

consciousness and therefore likely cease to experience pain and suffering?  Kootenai

seeks to prove that Ms. Green lost consciousness almost immediately and therefore

suffered minimally before she died.  Joseph Green, Ms. Green's husband and personal

representative, seeks to prove that his wife suffered immensely immediately after being

hit, run over, crushed, and during her transport to the hospital, and that she was conscious

for all of it.  She died shortly after arriving at the hospital.

A.     DISCOVERY

In April 2020, Mr. Green sent interrogatories to Kootenai asking for disclosure of

defense experts, their opinions, bases for their opinions, and identification of materials

---

[1] We refer to the various defendants simply as Kootenai.

reviewed by them. Kootenai refused to answer interrogatory 5, responding: "Defendants' experts expected to testify at the time of trial will be disclosed pursuant to Case Schedule Order." Mot. for Discr. Rev. (MDR), App. at 66. Kootenai provided the same answer to a corresponding request for production seeking disclosure of each defense expert's file.

### *Dr. Chris Heller*

On March 21, 2022, less than three months before the discovery order's deadline, Kootenai disclosed its expert witnesses. This was the first time Kootenai disclosed Dr. Chris Heller, a Spokane neurosurgeon. With respect to Dr. Heller, the disclosure stated:

> Dr. Heller is expected to provide testimony regarding Mrs. Green's injuries and level of consciousness resulting from the vehicle impact. Dr. Heller is expected to testify that Mrs. Green lost consciousness as a result of the initial impact and, thereafter, suffered a catastrophic and fatal injury. Dr. Heller is further expected to testify that Mrs. Green, on a more probable than not basis, suffered no period of conscious pain or suffering.

MDR, App. at 76-77. Absent from this disclosure was any disclosure of the bases for his opinions, the documents he reviewed, or his file. The only document Kootenai produced with respect to Dr. Heller was his curricula vita. Also absent from the disclosure were Dr. Heller's two opinions—first offered during his October 2022 deposition—that Ms.

Green suffered a "lateral whiplash" and a "transected pons"[2] upon impact.

Despite having almost three months before the discovery deadline, Mr. Green did not seek to depose Dr. Heller nor did Mr. Green promptly seek to compel Kootenai to more fully answer the expert interrogatory and expert request for production. The first time Mr. Green requested supplementation of expert discovery related to Dr. Heller was 10 days before the August 10, 2022 trial.

*Annaka Greer*

On August 2, Mr. Green's lawyers disclosed Annaka Greer as a lay witness and provided a declaration, and later a supplemental declaration, from her. Ms. Greer witnessed the accident and gave a statement to first responders. Both parties had been aware that she witnessed the accident, and Kootenai had even listed her as a witness.

Apparently, neither side had spoken with Ms. Greer until shortly before trial. When plaintiff's counsel spoke with her, counsel learned she had information helpful to his client. Ms. Greer's declaration states that Ms. Green was conscious and moaning before emergency responders arrived. This contradicted Dr. Heller's opinion that Ms.

---

[2] The pons is part of the brain stem. The autopsy report noted it was transected (severed). What is unknown is when it was severed. If it was severed at the time of the collision, Ms. Green likely would have suffered relatively minimally because pain signals would not have been going between her limbs/organs and her brain. Alternatively, her pons might have been accidentally severed during the autopsy.

Green had immediately lost consciousness.

*Dr. Jeremy Bauer and Dr. Jennifer Nara*

Also in early August, Mr. Green disclosed Dr. Jeremy Bauer (accident

reconstructionist and PhD in biomechanics) and Dr. Jennifer Nara (medical examiner) as

rebuttal witnesses. Mr. Green had timely disclosed Dr. Bauer as a liability expert but

now sought to have Dr. Bauer testify that Ms. Green was conscious after the accident.

Dr. Nara would provide the foundation for admitting the medical examiner's

autopsy report of Ms. Green. Dr. John Howard, the medical examiner who had

performed the autopsy, had retired and apparently was unavailable.

B.     TRIAL COURT ORDERS

*August 10, 2022 order and continuance*

On the morning of trial, Kootenai moved in limine for the trial court to exclude the

recently disclosed testimonies of Ms. Greer, Dr. Nara, and Dr. Bauer. The trial court

conducted a *Burnet/Jones*[3] analysis and ruled in favor of Mr. Green with respect to Ms.

Greer and Dr. Nara, but in favor of Kootenai with respect to Dr. Bauer. The trial court

provided Mr. Green the choice of proceeding to trial without Dr. Bauer or, as a lesser

---

[3] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997); *Jones v. City of Seattle*, 179 Wn.2d 322, 314 P.3d 380 (2013).

sanction, continuing trial so that Kootenai could depose him. Mr. Green chose the lesser

sanction, and trial was reset to November 7.

*September 30, 2022 order, including prohibiting new witnesses*

Later, Mr. Green moved to exclude Dr. Heller based on Kootenai's failure to

supplement its discovery responses. Rather than focusing on Kootenai's failure to

supplement, the trial court focused on Mr. Green's failure to file a motion to compel.

Because "there wasn't a motion [to compel,] I can't find that [Kootenai committed] a

discovery violation." MDR, App. at 158. Based on this reasoning, the court denied Mr.

Green's motion to exclude Dr. Heller, but ordered that Dr. Heller submit to a deposition.

The court also ruled that no other discovery or new witnesses would be permitted.

*Dr. Heller's deposition and his two new theories*

Dr. Heller's deposition occurred on October 4, 2022. He testified that the Ms.

Green suffered a transected pons when the van's tire crushed her head. He rejected the

possibility that her pons could have been partially transected due to the accident and then

fully transected either by an emergency responder or during Ms. Green's autopsy. He

also testified that Ms. Green lost consciousness immediately upon impact, before being

crushed, due to "lateral whiplash." MDR, App. at 90. Dr. Heller did not know of any

medical literature supporting his "lateral whiplash" theory, and his sole basis for it was

his experience watching football games on television.

On October 19, and as a result of Dr. Heller's newly disclosed opinions, Mr. Green filed a supplemental disclosure of rebuttal witnesses. The disclosure added two new witnesses, Dr. Robert Cantu and Dr. Andrew Josephson, and supplemented the prior disclosures of Dr. Bauer and Dr. Nara.

Dr. Bauer would testify that the fully transected pons did not occur until the autopsy. Drs. Cantu and Josephson would testify that "lateral whiplash" was not supported by any literature and that the transected pons did not occur until the autopsy. And Dr. Nara, in addition to providing the foundation for the autopsy report, would testify that the transected pons likely occurred during the autopsy.

On October 21, Mr. Green moved for leave to add Drs. Cantu and Josephson to his witness list. On October 26, Kootenai moved to strike Dr. Cantu, Dr. Josephson, and Dr. Nara (with respect to her transected pons testimony).

*October 28, 2022 oral ruling (the subject of our discretionary review)*

At the start of the hearing, Kootenai said it was narrowing the scope of Dr. Heller's testimony. Dr. Heller would no longer testify that Ms. Green lost consciousness upon initial impact—the "lateral whiplash" theory. Instead, he would testify that Ms. Green lost consciousness when her head was crushed by the van's tire—the "transected pons" theory.

At the end of the hearing, the court orally denied Mr. Green's motion to supplement Dr. Cantu and Dr. Josephson to his witness list and granted Kootenai's motion to strike the testimonies of those two doctors and to limit the testimony of Dr. Nara. The judge newly assigned to the case after the first judge's retirement, viewed her ruling as enforcing the first judge's prior orders.

The court then addressed the *Burnet* factors:

> I have also reviewed the *Burnet* [*v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997)] case, [and] the *Jones*[*v. City of Seattle*, 179 Wn.2d 322, 314 P.3d 380 (2013)] case, as well, and I do find that the defense has met or established the three factors, as well. With respect to the consideration of a lesser sanction, this Court does not believe that any sanction short of exclusion would mitigate any prejudice to the defense. This is in consideration of the lengthy history of this case. This case already was set for trial, not only set, but also parties, everyone was ready to proceed in August and was continued the first day of trial. We also have in consideration of the lesser sanction, we have the prior court Order, which was very narrow in its definition of why the continuance was granted. And there has been no legitimate reason for not deposing Dr. Heller prior to the beginning of the first trial.
>
> Second, was the violation willful or deliberate? I believe it was. We have the disclosure of Dr. Heller [in] March of 2022. That disclosure was appropriate in providing a synopsis of the anticipated testimony or evidence that Dr. Heller would provide. We had a discovery cutoff, and again, the trial that was set and the limited reason for the continuance, so that is going [to] support the finding of a willful or deliberate violation, particularly of the Court's September 23 Order.
>
> Lastly, whether the violation substantially prejudiced the opponent's ability to prepare for trial, we are basically on the eve of trial. You are set to begin November 7th. Here we are October 28th. And I appreciate that the plaintiffs have provided dates of, potential dates of depositions of these witnesses, but these are not side issues. These are main witnesses, you've

characterized them as rebuttal witnesses. When you're looking at nine days prior to trial, that's just not a meaningful opportunity to conduct discovery. Nobody has asked to continue this trial. That has been done once before and now we're in this position. So I will find that the violation does substantially prejudice the defense's ability to prepare for trial.

MDR, App. at 9-11.

Mr. Green filed a notice of discretionary review, seeking review of the trial court's October 28 oral ruling. The trial court later entered a written order memorializing its oral ruling. The written order parrots the *Burnet/Jones* factors without analysis. We granted discretionary review.

ANALYSIS

*Overview of* Burnet/Jones

"If . . . a party fails to obey . . . [a discovery] order entered under [CR] 26(f), the court in which the action is pending may make such orders in regard to the failure as are just." CR 37(b)(2). CR 37(b)(2) provides a nonexhaustive list of potential sanctions. These potential sanctions include designating certain facts as having been conclusively established, excluding evidence, striking pleadings, staying proceedings, dismissing causes of action, entering default judgment, treating the failure to comply as contempt of court, and ordering the disobedient party and/or their attorney to pay the other side's reasonable fees and costs associated with the discovery violation.

Years ago, trial judges had wide latitude in determining appropriate CR 37(b)

sanctions. Beginning in 1997, that discretion narrowed considerably. In the landmark

case of *Burnet*, the Supreme Court held that before a trial court can impose one of

CR 37(b)'s more severe remedies, the court must expressly consider on the record

(1) "'whether a lesser sanction would probably [] suffice[],'" (2) whether the violation

was "willful or deliberate," and (3) whether the violation "substantially prejudiced the

opponent's ability to prepare for trial." *Burnet*, 131 Wn.2d at 494 (quoting *Snedigar v.*

*Hodderson*, 53 Wn. App. 476, 487, 768 P.2d 1 (1989), *aff'd*, 114 Wn.2d 153, 786 P.2d

781 (1990)). Moreover, "the court should impose the least severe sanction that will be

adequate to serve the purpose of the particular sanction, but not be so minimal that it

undermines the purpose of discovery." *Id*. at 495-96.

> [I]t [is] an abuse of discretion for the trial court to impose [a] severe
> sanction . . . without first having at least considered, on the record, a less
> severe sanction that could have advanced the purposes of discovery and yet
> compensated [the aggrieved party] for the effects of the [noncompliant
> party's] discovery failings.

*Id*. at 497. The reason for this is simple: "'[T]he law favors resolution of cases on their

merits.'" *Id.* at 498 (alteration in original) (quoting *Lane v. Brown & Haley*, 81 Wn.

App. 102, 106, 912 P.2d 1040 (1996)).

The Supreme Court reaffirmed *Burnet* in *Blair* and emphasized that a *Burnet*

analysis must occur on the record every time a court seeks to impose one of the more

10

severe sanctions under CR 37(b), "such as witness exclusion." *Blair v. TA-Seattle E. No. 176*, 171 Wn.2d 342, 348-49, 254 P.3d 797 (2011). The sanctions order "need[s] to be supportable *at the time it was entered*, not in hindsight" combing through the record on appeal. *Id*. at 350. The appellate court cannot backfill the trial court's order by "consider[ing] the facts in the first instance as a substitute for the trial court findings that our precedent requires." *Id*. at 351.

In *Jones*, the court emphasized that the number of hearings the trial court holds on a discovery dispute is irrelevant if the hearings do not meaningfully address the *Burnet* factors. 179 Wn.2d at 340-41 (nine separate colloquies with counsel concerning late-disclosed witnesses "fell short of *Burnet*'s requirements"). Before excluding witnesses, the court must conduct a "meaningful inquiry into the reason they were disclosed belatedly [and] the consequences of excluding their testimony." *Id*. at 340. The court in *Jones* also invalidated a local rule that imposed "a presumption that late-disclosed witnesses will be excluded," holding that "*Burnet* and its progeny require the opposite presumption." *Id*. at 343. "[L]ate-disclosed testimony *will be admitted* absent a willful violation, substantial prejudice to the nonviolating party, and the insufficiency of sanctions less drastic than exclusion." *Id*. (emphasis added).

11

An important part of *Jones* was never explicitly noted by the majority. The

violation in *Jones* occurred "three weeks into trial." *Id.* at 333.[4] Under *Jones*, a court

must conduct a meaningful *Burnet* analysis anytime it is asked to exclude late-disclosed

witnesses or evidence. Neither the stage of proceedings nor the patently egregious nature

of the violation will excuse a trial court from conducting a *Burnet* analysis when called

on to impose a severe discovery sanction.

*Jones*'s implicit holding that the presumption of admissibility applies throughout

trial caused Justice Gonzãlez to pen a concurrence, joined by Justices Owens and

Fairhurst. Justice Gonzãlez agreed with the presumption of admissibility before trial, but

would have flipped the presumption to inadmissibility when the late-disclosure comes

midtrial. *Jones*, 179 Wn.2d at 373 (Gonzãlez, J., concurring). When the

---

[4] The plaintiff, a former firefighter, suffered severe life-altering injuries when he fell 15 feet while on the job. Jones sued his former employer, the city of Seattle, for negligence. Three weeks into the trial, the city disclosed a declaration from the plaintiff's father and sought to call the father as a witness. The father was a physical therapist and one of his son's treating medical professionals. The father, who was estranged from the plaintiff, intended to testify that in his medical opinion, most of his son's lingering issues were the result of alcoholism, not the fall. The city had not willfully withheld the evidence but had been grossly negligent in failing to investigate the claim. The father had been known to the city to be a potentially relevant witness for years prior to trial, but the city failed to talk to him until the father approached the city in the middle of trial. The trial court's error in *Jones* was ultimately harmless because most of the excluded evidence was still inadmissible for other reasons, and the portions that were potentially admissible were cumulative. *Jones*, 179 Wn.2d at 357.

discovery violation comes to light during trial, that circumstance "should free the sanction of witness exclusion from *Burnet*'s procedural safeguards and restore it to the reasonable discretion of the trial court." *Id*. At 374. The majority disagreed. Thus, even during trial, superior court judges' discretion to deal with discovery abuses is carefully circumscribed.

*Application of* Burnet/Jones

*(1) Would a lesser sanction probably suffice?*

As noted previously, CR 37(b)(2) provides a nonexclusive list of possible sanctions a court may impose against a party for violating a discovery order. Here, the trial court considered only one sanction on the record—witness exclusion.

The second trial judge applied a presumption in favor of exclusion based on the first trial judge's order that no new witnesses would be permitted. But under *Jones*, there is a presumption in favor of admissibility, and it is the burden of the party seeking exclusion to rebut that presumption. The second judge failed to hold Kootenai to this burden and instead utilized the first judge's September 30, 2022 order to shift the burden to Mr. Green.

One of the lesser sanctions the court could have considered, but failed to, was to continue the trial and require Mr. Green's counsel to "pay the reasonable expenses, including attorney fees, caused by the failure [to comply with the discovery order]."

CR 37(b)(2). This would include defense deposition costs and other defense costs related to moving the trial date. A court may decline to impose such expenses if it finds that noncompliance with the discovery order was "substantially justified or that other circumstances make an award of expenses unjust." *Id.* Assuming a sanction is justified here—and we later conclude it was not—imposing a monetary sanction against Mr. Green's counsel would likely deter a subsequent discovery order violation.

### (2) Was the violation willful or deliberate?

The trial court's entire analysis of the second factor was:

> We have the disclosure of Dr. Heller [in] March of 2022. That disclosure was appropriate in providing a synopsis of the anticipated testimony or evidence that Dr. Heller would provide. We had a discovery cutoff, and again, the trial that was set and the limited reason for the continuance, so that is going [to] support the finding of a willful or deliberate violation, particularly of the Court's September [30] Order.

MDR, App. at 10.

Impliedly, the trial court blamed Mr. Green for not knowing Dr. Heller's opinions earlier. We conclude that this blame is mislaid.

Mr. Green had the *ability* to depose Dr. Heller to learn his opinions, but he did not have the *duty* to depose Dr. Heller. More than two years before trial, Mr. Green served discovery questions seeking defense experts' opinions and the bases for those opinions. Despite CR 33(a)'s and CR 34(b)(3)(A)'s requirement that discovery be answered within

14

30 days, Kootenai's response was to delay answering until required by the discovery order.

"'The rules are clear that a party must *fully* answer all interrogatories and all requests for production, unless a specific and clear objection is made.'" *Johnson v. Jones*, 91 Wn. App. 127, 133, 955 P.2d 826 (1998) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 353-54, 858 P.2d 1054 (1993)). "If a party disagrees with the scope of production, or wishes not to respond, it must move for a protective order and cannot withhold discoverable materials." *Id.*

When Mr. Green served the interrogatories, Kootenai's initial response was evasive and it failed to identify any expert witnesses. CR 37(a)(3) dictates that "an evasive or incomplete answer is to be treated as a failure to answer." When Kootenai finally disclosed Dr. Heller two years after the expert interrogatory was propounded, Kootenai still failed to disclose the opinions that prompted Mr. Green's September 2022 motion to supplement witnesses—the "lateral whiplash" and the "transected pons" theories.

To underscore that Kootenai and not Mr. Green was the at-fault party, it is important to understand the history and purpose of CR 26(b)(5), governing discovery of expert witnesses. Washington adopted the rule in 1972 based on the corresponding 1970 update to the federal rules of civil procedure. *In re Det. of West*, 171 Wn.2d

383, 404 n.5, 256 P.3d 302 (2011). At that time, the rule provided a more limited right to interrogatories concerning expert witnesses. In 1985, Washington amended CR 26(b)(4)(A)(i), now CR 26(b)(5)(A)(i), to greatly expand the scope of expert witness discovery via interrogatories. 104 Wn.2d 1154 (effective Sept. 1, 1985). The purpose of the amendment "was to allow a party the option of conducting discovery with respect to expert witnesses entirely by interrogatory, without the expense and inconvenience of depositions." 14 DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 14:3, at 628 (3d ed. 2018).

Since 1985, the policy of this state is that lawyers should be able to conduct expert witness discovery entirely by interrogatory. Under *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 588, 220 P.3d 191 (2009), Mr. Green should not have been faulted for failing to promptly use every tool in the civil litigator's toolbox to pry discovery out of Kootenai. Mr. Green timely served his interrogatories more than two years before the discovery deadline. Instead of faulting Kootenai for spending two years evading its discovery obligation, the court faulted Mr. Green for not bringing a motion to compel. This was error. *See also Lampard v. Roth*, 38 Wn. App. 198, 201, 684 P.2d 1353 (1984) ("CR 26(e)(1) placed upon [Kootenai] the duty to seasonably supplement [its] responses to interrogatories[, but the judge] place[d] the burden on the innocent party."). Mr. Green could have moved to compel discovery. But, just as Mr. Green had no duty to

depose Dr. Heller to learn his opinions, Mr. Green had no duty to move to compel

complete responses from Kootenai. According to the Supreme Court, "[Mr. Green]

should not have needed to file a motion for an order to compel [Kootenai] to produce the

documents [Kootenai] was required to produce by the discovery requests themselves."

*Magaña*, 167 Wn.2d at 588.

Kootenai, not Mr. Green, had the duty to disclose Dr. Heller's opinions. Dr.

Heller's opinions about lateral whiplash and the cause of Ms. Green's transected pons

were first disclosed in his October 4, 2022 deposition. These untimely disclosures

prompted Mr. Green's motion to supplement his rebuttal witness disclosures,[5] and the

trial court's subsequent exclusion of witnesses. The trial court erred by placing the blame

---

[5] As the plaintiff, Mr. Green had the burden of proving damages. Arguably, the transected pons opinions of his experts were not rebuttal in nature. Nevertheless, what is inarguable is Kootenai's failure to properly disclose Dr. Heller's opinions.

Oftentimes, attorneys hope to gain an advantage by failing to properly answer discovery. This tactic leads to a series of last-minute motions to exclude evidence. Our jurisprudence makes it extremely difficult and risky for trial judges to exclude important evidence, otherwise admissible.

*The lesson for attorneys is this*: Comply with your discovery obligations. *The lesson for trial judges is this*: Rather than imposing a severe remedy such as excluding a witness, strongly consider ordering a trial continuance and requiring the at-fault attorney to pay a price for their discovery violation. For example, an attorney charging a percentage-fee can be ordered to charge a lesser percentage. An attorney charging hourly can be ordered to disgorge fees or to not charge for certain tasks associated with future trial preparation. Attorney monetary sanctions may be the surest way to correct attorney behavior.

on Mr. Green for Kootenai's discovery violations. We conclude the trial court erred by

finding that Mr. Green's discovery violation was willful or deliberate.[6]

Reversed.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Staab, J.

_____
Murphy, J.

_____

[6] Because we conclude that Kootenai's discovery violation prompted Mr. Green's motion to add additional witnesses, we do not address the third *Burnet/Jones* factor (whether *Mr. Green's* discovery violation substantially prejudiced Kootenai's ability to prepare for trial).