[No. 46116-8-I.   Division One.   March 5, 2001.]

SHELLEY R. SCOTT, *Respondent*, v. DIANA M. GRADER, ET AL., *Appellants*.

---

*Gerrit J. Ayers* (of *Freise & Welchman*), for appellants.
*Thomas C. Bierlein*, for respondent.

BECKER, A.C.J. — The appellant asks us to decide whether the tax returns and 1099 forms of expert witnesses are discoverable, an issue Washington courts have not yet addressed. We do not find the issue to be squarely presented in this appeal of a trial court order excluding an expert witness. Instead, the issue is whether a trial court may exclude the testimony of a late-disclosed expert witness who failed to produce any financial or employment records, when the court had earlier imposed an unchallenged order requiring that the witness permit all "material discovery"

as a condition for being allowed to testify at all. The court acted within its broad discretion, and we affirm.

Appellant Diana Grader rear-ended Shelley Scott's car. Scott filed a personal injury lawsuit against Grader. During the discovery period, defendant Grader reserved the right to request a Superior Court Civil Rule (CR) 35 medical examination of Scott, but the discovery cutoff date of October 25, 1999 passed without Grader making such a request. The only expert witnesses in the case at this point were those who had treated Scott.

Because Grader had liability insurance limits of only $25,000.00, Scott contemporaneously pursued a claim for underinsured motorist coverage with her own insurance company, Allstate. Scott's claim was that the collision caused her to suffer migraine headaches. Pursuant to the cooperation clause of the policy, Allstate required Scott to undergo a medical examination by Dr. Lawrence Murphy. Dr. Murphy examined Scott on September 27, 1999 and submitted a report that was considered in the arbitration of the underinsured motorist claim on November 1. Based on his examination and review of her medical records, Dr. Murphy reported his opinion that Scott suffered from a preexisting headache syndrome that was only temporarily exacerbated by the car accident.

Grader does not argue that Scott was obligated to share Dr. Murphy's report with her. But Grader did find out about it and she listed Dr. Murphy as her only expert medical witness on November 22, a month after the discovery cutoff. She then noted a perpetuation deposition for December 7. Scott objected, and the matter came before the trial court on cross motions: Grader's motion for leave to videotape Dr. Murphy's testimony for presentation at trial, and Scott's motion to exclude Dr. Murphy due to his untimely designation as a witness. With trial set for December 13, Scott said she would not have enough time after the deposition to obtain expert testimony responding to Dr. Murphy's testimony.

On December 2, the court entered an order allowing Grader to take a videotape deposition of Dr. Murphy for

perpetuation, on the condition that Scott be allowed to take a discovery deposition first, at Grader's expense. The court added a further condition: "plaintiff may move in limine to exclude the testimony if the witness refuses to permit any material discovery."

The following day, Friday, December 3, Scott delivered to Dr. Murphy a subpoena duces tecum. The subpoena requested a variety of documents, including Dr. Murphy's tax returns and supporting schedules, employment agreements with insurance companies and the Department of Labor and Industries, documents pertaining to Dr. Murphy's employment doing independent medical examinations and consulting services, and records showing any financial relationships with insurance companies. At the deposition on Tuesday, December 7, Dr. Murphy produced only one document: Scott's medical chart.

The next day, Scott moved in limine to exclude the testimony of Dr. Murphy for his failure to produce documents responsive to the subpoena. The court granted the motion. The trial proceeded, resulting in judgment for Scott on a verdict in the amount of $45,200. Grader appeals, assigning error to the order excluding Dr. Murphy.

Grader attempts to obtain de novo review by describing the fact pattern as unique and by characterizing the court's order as a conclusion of law derived by application of legal reasoning to undisputed facts. We reject this argument. It is well settled that the abuse of discretion standard governs review of sanctions for noncompliance with discovery orders. *Johnson v. Jones*, 91 Wn. App. 127, 133, 955 P.2d 826 (1998).

Grader points out that Dr. Murphy, at the deposition, straightforwardly answered questions about the percentage of his income derived from defense medical examinations. Grader cites cases from other jurisdictions holding that an expert witness may not be required to produce personal financial records to verify the accuracy of such estimates. A representative case is *Elkins v. Syken*, 672 So. 2d 517 (Fla. 1996). In *Elkins*, the Florida Supreme Court

expressed concern about the invasiveness of such requests and the negative effect on the trial process:

> In essence, an overly burdensome, expensive discovery process will cause many qualified experts, including those who testify only on an occasional basis, to refrain from participating in the process, particularly if they have the perception that the process could invade their personal privacy. To adopt petitioners' arguments could have a chilling effect on the ability to obtain doctors willing to testify and could cause future trials to consist of many days of questioning on the collateral issue of expert bias rather than on the true issues of liability and damages.

*Elkins*, 672 So. 2d at 522. Documents, the court said, serve only to emphasize in unnecessary detail what would be apparent on the simplest cross-examination: that certain experts are consistently chosen by a particular side in litigation. *Elkins*, 672 So. 2d at 521. Other courts have ruled similarly. *See also Jones v. Bordman*, 243 Kan. 444, 759 .P.2d 953 (1988); *Allen v. Superior Court*, 151 Cal. App. 3d 447, 198 Cal. Rptr. 737 (1984); *Russell v. Young*, 452 S.W.2d 434 (Tex. 1970). However, this line of cases acknowledges that an expert may be required to produce business records or financial documents in unusual circumstances. *See Elkins*, 672 So. 2d at 521.

Washington courts have not yet addressed whether it is an abuse of discretion, in the normal course of discovery, to compel an expert witness to produce records of income and earnings history in order to facilitate cross-examination on issues of bias, motive and credibility. Drawing the line as other courts have may well be beneficial to plaintiffs and defendants alike. But that issue is not squarely presented by the present case because the request for Dr. Murphy's financial records did not arise in the normal course of discovery.

█ Grader had no reasonable excuse for waiting until the last minute to obtain an expert witness. A party's untimely designation of a witness without reasonable excuse will justify an order excluding the witness. *See*

*Dempere v. Nelson*, 76 Wn. App. 403, 406, 886 P.2d 219 (1994) (expert witness excluded when party failed to disclose the witness until 13 days before trial); *Allied Fin. Servs., Inc. v. Mangum*, 72 Wn. App. 164, 168-69, 864 P.2d 1 (1993) (witnesses excluded due to party's failure to submit a witness list as required by pretrial order). The trial court could have simply disallowed the testimony of Dr. Murphy altogether. Indeed, a King County local rule provides that a witness not disclosed in compliance with witness disclosure deadlines "may not be called to testify at trial, unless the Court orders otherwise for good cause and subject to such conditions as justice requires." King County Local Rule 26(e). When a witness is allowed to testify despite an untimely designation, justice may well require the imposition of more stringent conditions than would otherwise be warranted.

The trial court's order put Grader on notice that Dr. Murphy would be allowed to testify only if he provided "material discovery." Given the context of the order, Grader should have understood that any doubts about what discovery was "material" were going to be resolved in favor of Scott, and that lack of time was not going to be an acceptable excuse for failing to produce documents.

Excluding the weekend, Grader had at least two days to challenge the scope of the subpoena in court before the deposition occurred on December 7. She did not do so. At the deposition, neither Grader nor Dr. Murphy objected to the subpoena as being unduly intrusive. Dr. Murphy testified that he did not have time to obtain some of the earnings records requested because they were in the possession of the medical center where he was formerly employed. Dr. Murphy decided on his own not to bring his federal tax returns because he felt they were lacking in relevant detail.

Scott was already disadvantaged by the shortness of time before trial. Less intrusive means of obtaining potential impeachment information about Dr. Murphy were not readily available. It was not unreasonable for Grader to insist on seeing Dr. Murphy's financial records in these circumstances even if they would not be ordinarily discov-

erable from a witness who had been timely designated. The trial court could have fairly concluded that production of the medical chart alone was not a good faith response to the subpoena.

We do not foreclose the possibility, in another case, of adopting a rule like Florida's to protect expert witnesses from having to disclose tax returns and other documentation of their personal finances. But in the circumstances of this case, we cannot find that the trial court abused its discretion in excluding Dr. Murphy.

■ Grader further argues that the judgment must be reversed because the order excluding Dr. Murphy for failure to provide discovery was not accompanied by consideration of lesser sanctions, as required by *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). In *Burnet*, the trial court had sanctioned the plaintiffs for discovery abuse by excluding an entire issue from the case, without considering lesser sanctions on the record. The Supreme Court reversed and established that when a trial court chooses one of the harsher remedies allowable under CR 37(b), it must be apparent from the record that the trial court explicitly considered whether a lesser sanction would have sufficed, and whether the disobedient party's refusal to obey a discovery order was willful or deliberate and substantially prejudiced the opponent's ability to prepare for trial. *Burnet*, 131 Wn.2d at 494.

There is no dispute that Grader's late listing of Dr. Murphy was both willful and prejudicial. The court considered a range of sanctions before entering the unchallenged order of December 2. That order allowed Dr. Murphy to testify, but forewarned that exclusion would be the remedy if he refused to permit material discovery. The order at issue in this appeal is the ruling, in which the court excluded Dr. Murphy after hearing from counsel in an unreported telephone conference. The *Burnet* requirements do not apply to that order because the court was merely enforcing the sanction specified in its earlier, unchallenged

order for the occasion that arose. We find no *Burnet* violation.

Scott requests attorney fees under RAP 18.9(a), arguing that Grader's appeal is frivolous. We decline to award fees. Grader's appeal is not so totally devoid of merit that there is no reasonable possibility of reversal. *See Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187 (1980). Rule of Appellate Procedure (RAP) 18.9(a). However, as the prevailing party, Scott is entitled to costs under RAP 14.2.

Affirmed.

COLEMAN and APPELWICK, JJ., concur.