IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHANIE BELISLE-WILLIAMSON, | No. 86242-1-I |
| Appellant, | DIVISION ONE |
| JOHN ANDREW WILLIAMSON, | |
| Plaintiff, | UNPUBLISHED OPINION |
| v. | |
| PROLIANCE SURGEONS, INC, PS; and DANIEL SEELY, MD, and wife and their marital community; | |
| Respondents, | |
| CHARLES PETERSON II and wife and their marital community; DAVID FITZGERALD and wife and their marital community; JEFF STICKNEY and wife and their marital community; THOMAS KNIPE and wife and their marital community; CAROL CORNEJO and husband and their marital community; MICHAEL SAILER and wife and their marital community ; JULIAN ARROYO and wife and their marital community; FRED HUANG and wife, and their marital community; MICHAEL MCADAM and wife and their marital community; CHARLES BIRNBACH and wife and their marital community; SAMUEL LEE and wife and their marital community; LISA BURNS and her husband and their marital community; MARK CAMPBELL and wife and their marital community; ROGER ZUNDEL, MD and wife and their marital community; John and Jane | |

Does 1- 50 and their marital
communities ,

Defendants.

SMITH, J. — In April 2016, Stephanie Belisle underwent an

adenotonsillectomy performed by Dr. Daniel Seely. A second procedure followed

in August 2016. After some difficulty eating and speaking, a different doctor

diagnosed Belisle with nerve damage. She sued Proliance Surgeons, Inc.,

Dr. Seely, and several others in April 2020. Several parties were dismissed on

summary judgment and the case proceeded to trial in November 2023. The jury

returned a defense verdict.

Belisle appeals, asserting that the trial court improperly dismissed claims

against Dr. Roger Zundel on summary judgment; improperly denied Belisle's

motion to shorten time; erred in limiting Belisle's testimony about her medical

conditions, erred in allowing late-disclosed expert testimony, and erred in

excluding Dr. Seely's Parkinson's disease diagnosis. Belisle also contends that

the evidence is insufficient to support the jury verdict. Finding no error, we affirm.

FACTS

Background

In April 2016, Stephanie Belisle sought care from otolaryngologist

Dr. Daniel Seely for a recurring tonsil infection. After taking a patient history and

performing a physical exam, Dr. Seely determined that she was a candidate for a

tonsillectomy with a possible adenoidectomy. Dr. Seely documented discussing

the nature of this surgery with Belisle, including its risks, benefits, and

alternatives. Belisle chose to proceed with the surgery.

The day of the surgery, the medical team provided Belisle with a series of documents including an informed consent form. The informed consent form listed nerve injury as a possible risk. Belisle signed the informed consent form and Dr. Seely performed the procedure.

### Postoperative Care

Belisle's first postoperative appointment took place with Lori Hill, a certified physician's assistant, about two weeks after the procedure. Belisle described a difficult recovery because she took very little pain medication and was having difficulty swallowing. She did note feeling significantly improved otherwise. Hill informed Belisle that she was slightly behind in recovery because Dr. Seely had to "go deeper" than normal to remove the tissue but that she should continue to improve.

Belisle saw Dr. Seely for her second postoperative visit, expressing greater difficulty swallowing and a feeling of "catching" on the right side of her throat. Dr. Seely performed a flexible fiberoptic laryngoscopy,[1] which was unremarkable. He recommended a barium swallow study and speech pathology evaluation.

Belisle returned to Dr. Seely in June with continuing symptoms. Dr. Seely prescribed antibiotics and scheduled the barium swallow study. He also noted

---

[1] A flexible fiberoptic laryngoscopy involves passing a small, flexible camera through the nose and into the throat to view the larynx.

that "if [Belisle] remain[ed] severely symptomatic, return to the operating room for direct inspection of the tonsillar fossa may be considered."

In early July, Belisle saw Dr. Seely's colleague, Dr. Roger Zundel, while Dr. Seely was out of town. She described severe difficulty swallowing and reported that she was completely unable to eat solid food. Dr. Zundel's physical exam was normal. Belisle saw Dr. Zundel a second time two weeks later, again reporting persistent gagging. Dr. Zundel expressed that he "d[id] not have a solid explanation" for Belisle's experience. He recommended an esophagoscopy with a biopsy but documented the need to discuss with Dr. Seely.

Second Surgery

Belisle underwent the esophagoscopy with biopsy when Dr. Seely returned in August 2016. Before the procedure, the medical team again provided Belisle with an informed consent form. The form described the planned procedure as a "micro direct laryngoscopy with biopsy, esophagoscopy" to evaluate Belisle's difficulty swallowing. By signing the form, Belisle acknowledged that "during the course of the operation . . . unforeseen conditions may necessitate additional or different procedures than those above set forth" and authorized the performance of such procedures. She also acknowledged that she had been informed of risks and complications, including nerve injury.

The consent form authorized Dr. Zundel, "and/or such associates or assistants, including, if applicable, other physicians who will have an active process in the surgery" to perform the procedure. Dr. Seely performed the procedure and Dr. Zundel was not otherwise involved.

4

While performing the micro-laryngoscopy and esophagoscopy, Dr. Seely saw a "tiny amount of residual lymphoid tissue" and performed a biopsy to remove it. Belisle's discomfort and difficulty swallowing continued after the second surgery.

### Additional Opinions

Following the second surgery, Belisle sought a number of additional opinions to determine the cause of her pain and dysphagia. Over the course of several months and with input from a variety of physicians and speech pathologists, Belisle determined that she suffers from a hypercontractile esophagus. Also known as a "jackhammer" esophagus, the condition makes it extremely difficult to swallow. Belisle believed the condition to be the result of nerve damage from her adenotonsillectomy.

### Initial Suit

In April 2020, Belisle sued 16 defendants, including Proliance Surgeons, Inc. (Proliance), Dr. Seely, and Dr. Zundel, for alleged medical malpractice while performing her tonsil surgeries. In addition to general negligence, Belisle asserted that Dr. Seely and Dr. Zundel failed to obtain informed consent for either procedure. Belisle also named nine other defendants, and their spouses and marital communities, who had never been involved in Belisle's care.

Belisle deposed Dr. Seely shortly after initiating the lawsuit. When asked when he retired, Dr. Seely informed Belisle that he "went out on medical leave" in May 2018. Belisle did not ask any further questions about that medical leave during the deposition or any time thereafter.

5

Dr. Seely also repeatedly defended his medical care, testifying that he performed each procedure correctly and did not cut deeply enough to cause nerve injury as claimed. Dr. Seely cited his own experience performing the surgery, as well as the pathology report confirming that he removed only tonsillar tissue with no additional muscle or nerve tissue, in support of his testimony. Belisle did not ask Dr. Seely about his informed consent procedures or pre-surgery discussions. Belisle did not depose Dr. Zundel.

<u>Motions for Summary Judgment</u>

Proliance first moved for summary judgment dismissal in December 2020. Bringing three claims, Proliance asserted that Belisle failed to produce the necessary expert testimony to sustain a medical malpractice claim, that Belisle's husband's derivative loss of marital consortium claim failed as a result, and that Belisle did not allege facts that could give rise to any action against the nine listed defendants who were not involved in her care.

Proliance voluntarily withdrew the expert testimony claim in January but continued forward with the other two claims. The trial court denied the motion as to the loss of marital consortium but granted summary judgment dismissing the individual claims against the nine other doctors at Proliance, their spouses, and marital communities.

After setting a trial date and working out the details of in-person versus Zoom attendance, Proliance moved for summary judgment a second time in June 2023. Proliance contended that Belisle lacked sufficient evidence to

establish a prima facie case for medical negligence, loss of consortium, or failure to secure informed consent.

Opposing summary judgment, Belisle produced declarations from Dr. Michael Kaplan and Dr. Matt Hershcovitch, both otolaryngologists, criticizing Dr. Seely and Dr. Zundel's informed consent process. At argument on the issue, the court acknowledged that it was difficult to piece together Belisle's evidence against Dr. Zundel but denied the entirety of the motion for summary judgment.

Dr. Zundel moved for reconsideration on the issue of informed consent because, as he did not perform the procedure at issue, he believed he had no legal duty to obtain informed consent. Belisle responded that because Dr. Zundel was "in the same practice" as Dr. Seely, handled the informed consent forms, and appeared on the consent forms, Dr. Zundel was liable for any injuries associated with the second procedure. The trial court disagreed and granted Dr. Zundel's motion for reconsideration, dismissing the informed consent claims against him.

In September 2023, Belisle moved for summary judgment. Belisle argued that no genuine issue of material fact existed as to the reasonableness and necessity of her medical bills. But she included no legal authority, analysis, or argument as to why she was entitled to a dispositive ruling on the issue. Five days later, Belisle moved to shorten time on her motion for summary judgment, acknowledging that the motion when filed fell outside the court's case schedule order deadline for dispositive motions. She argued that, as the medical bills were uncontested, shortening time was appropriate. Dr. Seely opposed Belisle's

7

motion to shorten time, clarifying that he did in fact contest medical causation and that causation is central to the reasonableness of medical care and necessity of any resulting medical bills.

The trial court denied Belisle's motion to shorten time, finding that she provided no legal authority, argument, or explanation as to why she could not have filed the summary judgment motion within the deadline. The trial court did not rule on her motion for summary judgment, leaving the question of whether the medical bills would be admitted to be determined at trial.

Other Pre-Trial Motions

In the days leading up to trial, the court heard argument on the remaining pre-trial motions that had not been addressed by either motion for summary judgment.

Informing the court that Dr. Seely had been diagnosed with Parkinson's disease in 2018, Proliance requested accommodations for medicine and rest breaks. Proliance also requested that the court instruct the jury about his condition so that they would not speculate about Dr. Seely's visible tremor. Belisle initially agreed with Proliance's request. After a recess, however, Belisle stated that "[plaintiff's counsel] just found out about [the diagnosis]" and claimed that Dr. Seely's disease must have existed at the time of Belisle's procedure. Instead of having the court simply inform the jury of Dr. Seely's diagnosis, Belisle indicated that she intended to argue it resulted in her injury. Belisle acknowledged that she did not have an expert to testify about the progression of Parkinson's disease or any evidence that Dr. Seely's eventual diagnosis

8

impacted either surgery. Given that lack of evidence, and the risk of leading the jury to speculate, the court excluded any testimony or argument that Dr. Seely's diagnosis was implicated in the alleged malpractice.

Proliance also moved in limine asking the trial court to preclude Belisle from testifying about her mental and emotional pain and suffering. The trial court denied the motion but reserved ruling on a similar motion in limine to exclude non-physician testimony on medical facts, standards of care, or causation. The court determined that Belisle, a former trauma nurse, may have been able to testify to some medical facts, and therefore, defense counsel needed to object at the time of questioning.

The trial court then addressed Belisle's request to admit the medical bills at issue as a group, requiring Belisle to submit each bill as an individual exhibit.

### Trial

The case proceeded to trial in November 2023. Belisle testified over the course of multiple days about her medical history, diagnoses and treatment options, and remaining symptoms. The court only limited Belisle's medical testimony on hearsay or foundational objections.

Dr. Seely testified in defense of his medical care and informed consent process. He unequivocally denied cutting deep enough to injure Belisle's nerves and stated that he complied with the standard of care. Both parties presented testimony from multiple experts.

Belisle's otolaryngologist experts testified that they believed Dr. Seely cut too deep and injured Belisle's vagus nerve. Neither described how the nerve

9

injury could have occurred, nor did they assert Dr. Seely breached the standard of care during the second procedure.

Dr. Seely's otolaryngologist expert, Dr. Dinesh Chhetry, testified that Dr. Seely did not breach the standard of care for either procedure. He specifically explained that to injure the vagus nerve, Dr. Seely would have had to cut through muscle and fat beyond the tonsillar tissue, of which no evidence exists.

Over the course of the trial, plaintiff's counsel consistently arrived late and budgeted time poorly. The court repeatedly admonished counsel and articulated that time management, not the unwieldiness of the medical bill exhibits, caused the drawn-out proceedings.

Following extensive testimony from both parties, the jury determined in an 11 to 1 verdict that Dr. Seely had not been negligent in either procedure and did not fail to obtain informed consent. Belisle appeals.

ANALYSIS

Summary Judgment

Belisle asserts that the trial court erred in granting summary judgment dismissing her informed consent claim against Dr. Zundel. She also asserts that the trial court erred in denying her motion for summary judgment concerning the admission of medical bills as reasonable and necessary. To the former, Proliance contends that summary judgment is appropriate because Dr. Zundel had no legal duty to obtain informed consent for a procedure he did not perform. To the latter, Proliance maintains that the trial court appropriately denied Belisle's

motion to shorten time and did not rule on her motion for summary judgment. We conclude the trial court did not err.

We review a summary judgment order de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. *Watkins v. ESA Mgmt., LLC*, 30 Wn. App. 2d 916, 923, 547 P.3d 271 (2024). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Watkins*, 30 Wn. App.2d at 923.

We review a ruling on a motion to shorten time for a manifest abuse of discretion. *Hood Canal Sand & Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 295, 381 P.3d 95 (2016). A trial court manifestly abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Bellerouche*, 33 Wn. App. 877, 889-90, 565 P.3d 604 (2025).

1.  Informed Consent

Belisle states that the trial court erred in granting summary judgment dismissal of the informed consent claim against Dr. Zundel because a genuine issue of material fact exists as to whether she gave informed consent to a second tonsillectomy by Dr. Seely. Because Belisle conflates the dismissal of the informed consent claim against Dr. Zundel with the ultimate jury determination in favor of Dr. Seely, and Dr. Zundel had no legal responsibility for damages because of a lack of informed consent for a procedure he did not perform, we disagree.

Under the doctrine of informed consent, a health care provider has a duty to disclose relevant facts about the patient's condition and the proposed course of treatment to allow the patient to make an informed health care decision. *Davies v. MultiCare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022). The doctrine rests on the presumption that patients have a right to make decisions about their medical treatment. *Backlund v. Univ. of Wash.*, 137 Wn.2d 651, 663, 975 P.2d 950 (1999). A patient may recover for a physician's failure to provide informed consent even if the diagnosis or treatment were not negligent. *Backlund*, 137 Wn.2d at 663.

To prove a breach of the duty to secure informed consent, a plaintiff must establish that: (1) the health care provider failed to inform the patient of a material fact relating to the treatment; (2) the patient consented to treatment without being aware of or fully informed of such material fact; (3) a reasonably prudent person under similar circumstances would not have consented to the treatment if provided with that material fact; and (4) the treatment in question proximately caused injury. RCW 7.70.050.

But health care providers do not carry equal informed consent obligations. *See Alexander v. Gonser*, 42 Wn. App. 234, 238, 711 P.2d 347 (1985) (not every entity and individual that falls within the definition of "health care provider" has equal informed consent obligations). "To provide for equal informed consent obligations as to every person and entity falling within the definition [of 'health care provider'] would not be justified." *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 55, 785 P.2d 815 (1990). And RCW 7.70.050 limits

12

informed consent claims to treatment situations.  *Gomez v. Sauerwein*, 180 Wn.2d 610, 617, 331 P.3d 19 (2014).

Belisle claims that the trial court erred in granting summary judgment because the consent form did not mention Dr. Seely and purported to provide Dr. Zundel consent to perform only a laryngoscopy (with possible biopsy) and esophagoscopy.  This conflates a number of different issues.

To begin, the trial court granted summary judgment dismissing only the informed consent claim against Dr. Zundel following a motion for reconsideration. On appeal, Belisle does not argue that Dr. Zundel failed to obtain informed consent to perform the procedure.  Rather, she seems to assert that Dr. Zundel failed to obtain informed consent for Dr. Seely to perform the procedure actually performed.  But no Washington case law or statutory authority provides that a physician who did not perform or otherwise control a procedure is liable for a lack of informed consent for a procedure performed by another physician.  And the trial court specifically denied summary judgment on the informed consent claim against Dr. Seely.

Additionally, in addressing the RCW 7.70.050 factors required to prove a lack of informed consent, Belisle fails to reference Dr. Zundel at all.  Belisle states that she consented to the procedure without being fully aware of or informed of the difference between having a scope through one's larynx and esophagus and having a piece of tissue removed, especially by a physician she already suspected of "botching" the initial procedure.  She then maintains that any reasonable person would not have consented given the full information and

13

that Dr. Seely further injured her throat in the process. She makes no assertions as to Dr. Zundel's role in the process.

Because Belisle conflates the dismissed informed consent claim against Dr. Zundel with the maintained claim against Dr. Seely, Dr. Zundel is not liable for damages for failure to obtain informed consent on a procedure performed by Dr. Seely, and Belisle fails to establish that Dr. Zundel failed to obtain informed consent, summary judgment was proper.

2. <u>Medical Bills</u>

Belisle next claims that the trial court's denial of summary judgment concerning her medical bills was prejudicial error. Because the trial court properly denied Belisle's motion to shorten time and did not rule on her motion for summary judgment, Belisle is incorrect.

"A trial court has discretion when ruling on a motion to shorten time." *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 236, 88 P.3d 375 (2004). A trial court also has discretion to "achieve the orderly and expeditious disposition of cases." *Peluso v. Barton Auto Dealerships, Inc.*, 138 Wn. App. 65, 71, 155 P.3d 978 (2007). Under Civil Rule (CR) 56(c), a motion for summary judgment "shall be filed and served not later than 28 calendar days before the hearing."

Here, the court initially set trial for October 30, 2023. The scheduling order required all dispositive motions decided by October 16, 2023, two weeks before trial. Belisle filed her motion for summary judgment on September 28, 2023. Because a motion for summary judgment shall be filed no later than 28

14

days before the hearing, the hearing on Belisle's motion for summary judgment would have taken place on October 27, 2023. Recognizing that this placed her outside the deadline for dispositive motions, Belisle moved to shorten time. She failed to provide any legal authority and her only argument was that "there really is no genuine issue as to whether these medical records and bills show reasonable and necessary treatments and billings." She did not offer any explanation as to why she filed the motion for summary judgment late.

On appeal, Belisle asserts that the trial court erred in denying the motion to shorten time based on rigid application of technical legal rules rather than the merits of the motion. She then contends that the denial of the motion for summary judgment prejudiced Belisle because it forced plaintiff's counsel to wade through each medical bill individually at trial.

To the former, Belisle did not provide any explanation as to why her motion was filed so late nor any authority as to why she was entitled to a dispositive ruling on the issue. Her only argument was that "[n]o one here in anyway [sic] disputes that the medical treatment and billing is reasonable." But as Proliance and Dr. Seely articulated, they did clearly contest medical causation and that causation is central to the reasonableness of medical care and necessity of any resulting medical bills. Given the clear deadlines, the lack of legal authority, and the lack of explanation as to why the motion was filed beyond the deadline in the case scheduling order, we conclude that the trial court did not manifestly abuse its discretion in denying Belisle's motion to shorten time.

To the latter, we conclude that Belisle misrepresents the trial court's order and fails to establish resulting prejudice because the trial court specifically stated, outside the presence of the jury, that any delay resulted from the plaintiff's poor time management.

Again, Belisle asserts that the trial court erred in denying her motion for summary judgment. But the trial court did not rule on her motion for summary judgment. And Belisle fails to establish that any of the supposed prejudice actually resulted from the denial of the motion to shorten time.

The record confirms that plaintiff's counsel repeatedly arrived to court late, asked repetitive questions that unnecessarily extended testimony, and failed to adequately allocate time for more relevant evidence. In fact, when plaintiff's counsel approached double the amount of time he had estimated for more than one witness, the court stated:

> I have seen — so far all the extra time — you keep pointing to the medical bills as reason you need more time. But everything I've observed are delays coming from other reasons. . . .
>
> I'm just warning you, you need to be efficient with presenting your case. And, frankly, what I'm observing is not efficient.

Belisle suggests that the trial court's refusal to grant her summary judgment motion forced her to march through the bills one by one, causing the inefficiency. This inefficiency then frustrated the court, leading to admonishment Belisle contends constituted an expression of bias in front of the jury. But as noted, the record shows that while the delays may have centered on the medical bills, they resulted from plaintiff's counsel's actions. Plaintiff's counsel could have moved through the individual exhibits in a smoother and more efficient manner.

16

Additionally, any admonishment from the court often took place outside of the presence of the jury. As a result, the jury would not have been impacted by any alleged expression of bias.

Because the court did not manifestly abuse its discretion in denying Belisle's motion to shorten time and the denial did not prejudice her case, the trial court did not err.

<u>Evidentiary Rulings</u>

Belisle contends that the trial court erred in limiting Belisle's medical testimony, allowing Proliance's late-disclosed expert to testify, and precluding argument about Dr. Seely's Parkinson's disease diagnosis. Proliance disagrees, noting that the record does not display any such limitation, Proliance's expert did not testify at trial, and Belisle failed to establish the diagnosis's relevance. We agree with Proliance.

We review evidentiary rulings for an abuse of discretion. *Bengtsson v. Sunnyworld Int'l, Inc.*, 14 Wn. App. 2d 91, 99, 469 P.3d 339 (2020). A trial court abuses its discretion if its ruling is manifestly unreasonable or based on untenable grounds or reasons. *Bengtsson*, 14 Wn. App. 2d at 99. But an evidentiary error is only grounds for reversal if it results in prejudice. *Bengtsson*, 14 Wn. App. 2d at 99. " 'An error is prejudicial if 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " *Bengtsson*, 14 Wn. App. 2d at 99 (internal quotation marks omitted) (quoting *City of Seattle v. Pearson*, 192 Wn. App. 802, 817, 369 P.3d 194 (2016)).

1. <u>Medical Testimony</u>

Belisle states that the trial court erred by granting a motion in limine that "effectively muzzled" her; limiting her ability to testify to her own medical conditions and diagnoses in the language she would normally use as a trained and experienced nurse. Because the record does not display any such limitation and Belisle fails to provide legal authority to support her argument, the court did not err.

Generally, an appellate brief must include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6).

Belisle claims that the trial court granted Proliance's motion in limine, improperly precluding Belisle from testifying about medical issues in the language she would normally use as a trained emergency nurse. But the portion of the record that Belisle cites in support of her claim addresses a Proliance motion attempting to preclude expert witnesses from testifying specifically to causation. Belisle is not an expert witness and the trial court denied Proliance's motion.

Proliance did move to preclude Belisle from testifying about her mental and emotional pain and suffering later in the record but the trial court again denied that motion. And the trial court reserved ruling on a motion to exclude non-physician testimony on medical facts, standards of care, and causation, specifically noting, "presumably some people can testify to what we might call medical facts, for example, . . . [Belisle is] not a physician — well, she is a nurse."

18

The record does not support Belisle's assertion that the trial court granted any particular motion in limine.

In addition to misrepresenting the record, Belisle presents no legal authority to support her argument that the trial court acted improperly. Instead, Belisle makes the broad statement that "it simply cannot be an accurate statement of the law that a plaintiff with twenty years' experience as an ER nurse cannot bring that experience to bear on her own understanding of the diagnoses and treatments she received." She provides no case law or statutory authority to explain why that simply cannot be the case. She then continues on to request that this court draw "a clearer line than currently exists in Washington law."

Because Belisle provides no citations to legal authority nor references to relevant parts of the record, we conclude the trial court did not improperly limit Belisle's testimony.

2. Expert Testimony

Belisle next asserts that the trial court erred in allowing Dr. Michael Rubenstein, a late-disclosed Proliance expert witness to testify. Because the trial court acted appropriately in refusing to exclude Dr. Rubenstein under *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), and Dr. Rubenstein did not actually testify at trial, we conclude that the trial court did not abuse its discretion and no prejudice occurred.

Before determining that exclusion of a witness is an appropriate sanction for late-disclosure, a trial court must explicitly consider whether the late-disclosure was willful or deliberate, whether it substantially prejudiced the

opposing party's attempts to prepare for trial, and whether lesser sanctions would suffice. *Burnet*, 131 Wn.2d at 1040-41.

We review a trial court's application of the *Burnet* factors for an abuse of discretion. *Scott v. Grader*, 105 Wn. App. 136, 152, 18 P.3d 1150 (2001). But an error, including an abuse of discretion, is harmless if it is " 'trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case.' " *Veit v. Burlington N. Santa Fe Corp*, 171 Wn.2d 88, 99, 249 P.3d 607 (2011) (internal quotation marks omitted) (quoting *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 311, 898 P.2d 284 (1995)).

Here, Proliance disclosed Dr. Rubenstein as a new expert after the April 2023 discovery cutoff but six weeks before trial. Proliance asserted that good cause existed to allow Dr. Rubenstein to testify because he would rebut new declarations Belisle submitted in response to an August 2023 summary judgment motion. Proliance further contended that the late disclosure was neither willful nor prejudicial given Belisle's new declarations.

In response to Proliance's motion, Belisle did not discuss any of the *Burnet* factors. Rather, Belisle stated only, "[m]y neurosurgeon says that if this is allowed that I must also get a neurologist to support him and not be 2 of the defendants' experts versus just him."

The trial court then marched through the *Burnet* factors, noting that Belisle did not dispute Proliance's assertion that the proposed witness served to respond to new opinions set forth in her own expert declarations, that Belisle failed to

articulate why she would need a new expert if Dr. Rubenstein was not excluded, and that any prejudice could be easily mitigated. Although the trial court did not explicitly address whether lesser sanctions would suffice, Belisle presented no argument as to why only exclusion was appropriate and the court clearly articulated that each *Burnet* factor failed to justify excluding Dr. Rubenstein as a witness.

Additionally, Proliance did not call Dr. Rubenstein to testify at trial. As a result, the trial court's refusal to exclude Dr. Rubenstein as a potential witness in no way affected the final outcome of the case. Therefore, any error would be harmless.

We conclude that the trial court did not abuse its discretion in refusing to exclude Dr. Rubenstein from the witness list and no resulting prejudice occurred.

3. Parkinson's Diagnosis

Belisle then contends that the trial court erred in excluding argument about Dr. Seely's Parkinson's disease diagnosis because the diagnosis could have been the causal link to establish Dr. Seely's negligence. Because Belisle failed to present any evidence to support this claim, the trial court did not abuse its discretion in excluding argument linking the diagnosis to negligence on Dr. Seely's part.

Evidence must be relevant to be admissible. ER 402. Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable. ER 401.

Belisle asserts that Dr. Seely's Parkinson's disease likely impacted his ability to perform surgery at the time of her operation and that his later diagnosis is clearly relevant evidence. She fails, however, to provide any evidence at all that Dr. Seely was impacted by the disease at the time of her surgery. Before the trial court, Belisle stated only, "Wikipedia, everybody is saying [Parkinson's displays early signs]." She did not provide any expert testimony, nor did she explain who "everybody" is. And when asked specifically by the court for any admissible evidence that Dr. Seely may have suffered Parkinson's symptoms at the time of surgery, Belisle conceded, "no, I don't have any evidence, Your Honor."

Belisle next suggests that this lack of evidence is immaterial because Proliance sprung the diagnosis on opposing counsel at trial and Belisle did not have time to find an expert witness. But, in April 2023, Belisle deposed Dr. Seely for three hours and had ample opportunity to discover Dr. Seely's diagnosis. In fact, Dr. Seely disclosed in that deposition that he left the practice on medical leave in May 2018. Belisle did not ask any further questions about that medical leave. Neither Dr. Seely nor defense counsel hid the diagnosis from Belisle at any point.[2]

---

[2] At oral argument, Belisle's attorney contended that the exclusion of Dr. Seely's Parkinson's disease diagnosis implicated a discovery issue because Proliance denied Belisle's attempts to uncover Dr. Seely's diagnosis. The record does not reflect any such denial. No indication exists that Dr. Seely failed to respond to any discovery requests concerning his health. To the contrary, Belisle's trial attorney noted that they were unaware of any diagnosis until Proliance raised the issue as a motion *in limine*. And even had Belisle been able to prove discovery interference, she admitted to a complete lack of evidence connecting Dr. Seely's diagnosis with the alleged injury. Furthermore, Belisle did

Here, Belisle failed to provide any admissible evidence indicating that Dr. Seely's Parkinson's disease impacted her surgery. As a result, the trial court did not abuse its discretion in precluding argument based on the diagnosis.

<u>Sufficiency of Evidence</u>

Belisle claims that the evidence at trial was insufficient to support the jury's determination that Dr. Seely was not negligent. Proliance first contends that Belisle failed to preserve the issue for appeal. Proliance then asserts that substantial evidence supported the verdict and Belisle improperly asks this court to reweigh evidence.

Generally, a party may not raise an issue for the first time on appeal. RAP 2.5(a). A party may only raise an issue for the first time if it addresses lack of jurisdiction, failure to establish facts upon which relief can be granted, or manifest constitutional error. RAP 2.5(a). When a party does not present a claim of insufficiency of the evidence to the trial court, it is not subject to review on appeal. *Fowlkes v. International Broth. of Elec. Workers, Local No. 76*, 58 Wn. App. 759, 772-73, 759 P.2d 137 (1990).

Belisle did not raise the issue of insufficient evidence before the jury verdict nor did she move for a new trial or reconsideration after the verdict. We conclude that Belisle failed to raise the issue below and none of the RAP 2.5(a) exclusions apply.

not move for a continuance to conduct additional discovery or obtain more evidence.

### University of Washington Involvement

Lastly, Belisle assigns error on the basis that newly discovered evidence would have been material to the outcome of the trial. Because Belisle did not raise this issue below, we decline to reach it.

Again, a party generally may not raise an issue for the first time on appeal. RAP 2.5(a). If newly discovered evidence arises after the close of trial, CR 59(a)(4) allows a party to move for a new trial provided that evidence would not have been discovered and produced at trial. CR 60(b)(3) then allows relief from judgment if newly discovered evidence could not have been discovered in time to move for a new trial.

On appeal, a party must include legal authority and references to the record in support of the issues presented for review. RAP 10.3(a)(6).

Here, Belisle asserts that newly discovered evidence that the University of Washington manipulates patient care to protect physicians from malpractice suits would have impacted the jury's verdict. She failed to raise this issue during trial, or to move for a new trial or relief from judgment as a result of that newly discovered evidence. We conclude that Belisle failed to raise the issue below and decline to reach the issue.

We affirm.

WE CONCUR:

24